David F. Lee, Jr., J.
Plaintiff moves pursuant to CPLR 3211 (subd. [b]) for an order “ dismissing the first, separate defense as .to the third cause of action on the ground that a defense thereto is not stated and the defense alleged has no merit”. The defendant, by way of cross motion, moves pursuant to CPLR 3211 (subd. [a], par. 5) for judgment dismissing the second and third alleged causes of action of the third amended complaint ‘ ‘ upon the ground that said Causes of Action may not be maintained because of the statute of limitations ”.
The facts, so far as here pertinent, are stated in defendant’s memorandum, which plaintiff’s counsel notes “ are accurately stated ’ ’:
“ Prior to May 10, 1956, the Defendant manufactured a hay elevator. About May 10, 1956, this hay elevator was sold and delivered to the J. F. Woodhouse Company. Thereafter, in 1956 the Woodhouse Company sold the elevator to the Walton Farm Supply Company, a retail farm equipment dealer. The Walton Farm Supply Company in turn sold the elevator to Charles Gavett who operates a dairy farm at Hamden, New York. The sale to Mr. Gavett also occurred in 1956.
“ In November 1963, while this hay elevator ivas being moved in Mr. Gavett’s barn, it tipped over and the Plaintiff was injured. The present action was instituted by the service of a Summons and Complaint on or about February 8, 1965. The original Complaint contained one cause of action based upon a theory of negligence on the part of the Defendant.
“ Subsequently by Court Order the Complaint was amended on two occasions. The Third Amended Complaint which was served on December 12, 1967, contains three alleged causes of action ”.
The complaint alleges separate causes of action for (1) negligence, (2) breach of implied warranty and (3) ‘ ‘ strict liability in tort.”
On the argument of these motions it was not disputed that the second alleged cause of action for breach of warranty is barred by the Statute of Limitations, and, of course, the defendant’s motion as to the second alleged cause of action should be granted.
The question for determination by the court is that raised on the motions addressed to the third alleged cause of action that alleges “ defendant is strictly liable to plaintiff in tort.” The pleadings and the well-written memoranda submitted by counsel present novel questions underlying the basic question. Does the pleading sound in tort or does it sound in contract? Is it bottomed or based on breach of warranty or on negligence ? When did the alleged cause of action accrue ? What was the time lim *482 itation for the commencement of the action? Does CPLR 213 (snbd. [1]), CPLR 213 (subd. [2]) or CPLR 214 (subd. [5]) apply, or does subdivision (2) of section 2-725 of the Uniform Commercial Code apply to the alleged cause of action for ‘1 strict liability in tort ”?
The pleading which is the subject of this motion alleges, in part:
‘ ‘ twenty-fifth : That defendant manufactured and placed into commerce said elevator which was a dangerously defective device and wholly failed to warn the plaintiff or others of the dangerous and defective nature thereof.
‘ ‘ twenty-sixth : That the dangerous defects of said hay elevator consisted of the absence of any safety devices, the absence of a stop or stops to prevent elevation of said elevator beyond the point at which it tended to become top heavy, to upset and collapse; being so designed and manufactured that it tended at certain heights and angles of elevation to become top heavy and to upset and collapse; the failure to publish and furnish with said machine any operating instructions or warnings, in spite of knowledge on the part of defendant that said machine had no stops and tended at certain elevations to become top heavy and upset and collapse; and being unfit for the purposes for which same was manufactured and sold.
‘ ‘ twenty-seventh : That while plaintiff was assisting said Charles W. G-avett in moving said elevator upon its wheels within the driveway portion of said Gavett barn said elevator, because of its inherent dangerous defects, upset, collapsed and fell upon the plaintiff, causing the injuries and damages to plaintiff as hereinbefore alleged, as a result whereof defendant is strictly liable to plaintiff in tort ”.
Defendant’s answer alleges, inter alia:
“ 10. The Second and Third alleged causes of action are for implied warranty and strict liability which causes of action accrued on the date of the sale to Charles Gavett of the elevator referred to in the Third amended Complaint.
“ 11. Said causes of action did not accrue within six years next preceding the commencement of this action, and are barred by the statute of limitations as provided by Section 213 of the Civil Practice Law and Rules.”
The defendant’s counsel in their memorandum urge:
“ The concept of strict liability in tort is new. It was conceived by Professor Prosser about ten years ago and was recognized by New York State in Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432 (1963). The majority of the Court in *483 Goldberg, supra, did not use the term strict liability, however, but characterized the decision of the Court as a simple extension of the cause of action for breach of implied warranty to all persons whose use is contemplated by the manufacturer. Judge Burke in his dissenting opinion, page 440, recognized that it was implicit in the majority decision that the only difference between implied warranty and strict liability is one of phrasing.
“ We have not discovered a single New York case which has dealt with the question of when a cause of action for strict liability accrues. However, based upon the language of the Court in Goldberg, supra, it is logical that if the Court of Appeals is called upon to answer this question, it will apply the six year statute applicable to an action for implied warranty, and will hold that this cause of action accrues from the date of sale.
“ There is no logical reason why the law with reference to application of the Statute of Limitations in a negligence cause of action should apply, because by its very nature, a cause of action for strict liability permits a recovery by the plaintiff without the obligation of proving any negligence on the part of the defendant. A cause of action based on strict liability is essentially an action based on implied contract. Negligence is not an element of it. Therefore it should not be treated as an action in negligence. * * *
“It should be noted that the Uniform Commercial Code, Section 2-725 (2) now states specifically that any action for breach of contract for sale must be commenced within four years after the cause of action accrued, and, with one exception not applicable here, a breach of warranty cause of action accrues when tender of delivery of the product is made. This section became effective September 27, 1964, and therefore is not applicable to the present action. It does show that the expressed legislative intent is no different in this respect than the long established decision-made law. The Practice Commentary indicates that subsection (2) of Section 2-725 is consistent with prior New York case law.
“ The third alleged cause of action for strict liability is barred by the Statute of Limitations and should be dismissed.”
On the other hand, plaintiff’s counsel in their memorandum assert and urge that:
‘ ‘ The cause of action in 1 strict liability in tort ’ should be governed by either the six-year limitation imposed by Section 213 (1), CPLR, or the three-year limitation of Section 214 (5), CPLR, and, in either event, the statute should be held to run *484 from the happening of the accident and the occurrence of the injury.
‘ ‘ Although most often courts, including those in New York State, arrive at the application of the doctrine of strict liability in tort through the fiction of extending the doctrine of breach of implied warranty to those users of a product not in privity with the defendant, which is an anomalous application of contract law. It is submitted that the doctrine is one which, by its very name, sounds in tort, and it is most closely and logically analogous to the field of negligence law and is properly an extension thereof.
“ The leading case in New York State applying the doctrine of strict liability in tort under the guise of extending warranty law was Goldberg v. Kollsman Instrument Corp., 12 N Y 2d 432 (1963). There the Court of Appeals held the manufacturer of an airplane liable to an American Airlines passenger who was killed in the crash of a Lockheed aircraft. They did so in language which would appear to extend the doctrine of implied warranty.
“ As recently as 1967, the same court, through Judge Keating, used similar language in holding the manufacturer of a defective gas mask liable to the estate of a deceased fireman to whom the mask was furnished by the City of New York after it purchased the mask used, in Rooney v. S. A. Healy Co. and Mine Safety Appliances Co., 20 N Y 2d 42 (1967). * * * Judge Keating quotes approvingly from the Goldberg case at pages 46 and 47 of the Rooney decision as follows: ‘ A breach of warranty * * * is not only a violation of the sales contract * * * but is a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer. ’ * * *
“ [T]he statute of limitations, whether 6 or 3 years, should be held to run from the date of the accident and injury caused by this latent defect, rather than from the date of sale. To hold otherwise would reward the manufacturer who is most skillful and artful in concealing the defect and who is lucky in not having that defect produce injury within six years from its sale.”
The St. John’s Law Review (vol. 41, p. 401 [1967]) under “Notes” on “ Manufacturer’s Strict Tort Liability to Consumers For Economic Loss, ’ ’ under the heading ‘1 Statute of Limitations” (p. 411), says: “Under the UCC, an action for breach of warranty normally must be commenced within four years from the date the seller tenders delivery. On .the other hand, under New Jersey statutes, and the statutes in many *485 states, the period of limitation is two years from the date of the personal injury, or six years from the date that the consumer suffers property damages. Which statute would be applicable in Santor, remains unresolved. It would seem, however, that the court’s insistence that the consumer not be limited by the intricacies of the law of sales would tend to favor a decision in favor of the use of the strict liability in tort theory. Although this might allow actions for economic loss many years after the original sale, possibly imposing a heavy burden upon manufacturers, the plaintiff would be equally burdened to prove that the defect was in existence while the product was in the control of the manufacturer and that he had no cause to know of the defect earlier. In any event, the issue remains unresolved.” (Footnotes show reference in first sentence is to section 2-725 of the Uniform Commercial Code. “ Santor ” is Santor v. A. & M. Karagheusian, Inc., 44 N. J. 52.)
In an article by Professor, now Dean, Robert W. Miller in the Syracuse Law Review (vol. 17, p. 25 [1965]) entitled “ Significant New Concepts of Tort Liability — Strict Liability” he makes the observation (p. 30) that “ this new kind of strict liability, as set forth in the Restatement, is neither based on negligence, nor is it of the variety of absolute liability used in the area of ultra-hazardous activity. It is being unfolded outside of the traditional thinking in warranty law. It is an amorphous term and one difficult to comprehend.”
Another article in the Syracuse Law Review (vol. 18, pp. 1, 4 — 5 [1966]) “ About Tomorrow’s Tort Trends,” by William E. Knepper, says:
“ There are indications that ‘ strict liability ’ (which is actually a misnomer, because it is not really ‘ strict ’) has become an established part of our jurisprudence. This doctrine was thrust into American jurisprudence with a substantial impact when the American Law Institute adopted the new Section 402A in its Restatement of the Law (Second), Torts.
‘ ‘ While it has been contended, with substantial justification, that a rule of strict liability in tort establishes liability without fault, the principal element of this doctrine is that it eliminates the requirement that1 negligence ’ of a supplier must be proved. The weight of today’s authority imposes upon a plaintiff the burden of proving the following in order to submit his case to a jury under the doctrine of strict liability:
‘ ‘ 1. The product was actually defective to the extent that it was unreasonably dangerous;
11 2. The defect existed when the product left the supplier;
*486 “ 3. The defect was the proximate cause of the plaintiff’s injury;
“4. At the time of injury the use of the product was one reasonably to be foreseen under the circumstances.
‘1 It may be argued that the mere proof of a defective condition imposes a lighter burden than the old rule which required proof that negligence caused the defect. However, in the breach of warranty cases, little more than the mere proof of a defect is required. If, as is here contended, a single cause of action is desirable (instead of separate actions for negligence, breach of implied warranty, breach of express warranty, etc.) then the new rule might simplify litigation in this field. ’ ’
Writing of Greenman v. Yuba Power Prods. (59 Cal. 2d 57, [1963]), referred to in Goldberg v. Kollsman Instrument Corp. (12 N Y 2d 432 [1963]), an article, “ Strict Products Liability and the Bystander” in the Columbia Law Review (vol. 64, p. 916 [1964]) states at page 934, under “ Strict Tort Rationale “ The effect of Justice Traynor’s approach is to create alongside the retailer’s expanding warranty obligation a new tort imposing strict liability on the manufacturer for personal injuries caused by defective products. This innovation avoids the need for making apologies to warranty doctrine for each abrogation of the privity requirement to permit another, more remote, class of plaintiffs to recover. The plaintiff’s status prior to his injury is irrelevant under the new dispensation; he need only be ‘ a human being, ’ which is all the bystander is. Indeed, the new theory requires neither a relationship between the plaintiff and the manufacturer based on contract or status, nor a connection between the plaintiff and the manufacturer’s product that antedates the injury.”
In the same article, at page 936 under “ Conclusion,” it is stated: “ The merit of Justice Traynor’s approach in Greenman is that he has expressed with clarity the loss-distribution rationale for imposing strict liability upon the manufacturer of a defective product and has used it to construct a conceptual framework specifically designed to realize that end. Not only has he recognized that this strict liability must be grounded in tort rather than in contract, but he has taken care not to assimilate the elements of the new cause of action to those of other torts having incompatible rationales. The bystander benefits from the explicit abandonment of a contractual basis because the privity requirement is abolished without an apologetic necessity for substituting some other relationship with the product or its buyer as a prerequisite to recovery. Moreover, his careful creation of a new delict to accord with the *487 principle of loss distribution seems to eliminate the hazard to the bystander of the requirement that injury to a person in the plaintiff’s position be foreseeable at the time of sale.”
CPLR 214 (subd. [5]) eliminates the provisions of the Civil Practice Act which distinguished personal injuries resulting from negligence and those not resulting from negligence. CPLR 214 (subd. [5]) requires that an action to recover damages for personal injury be commenced within three years after the cause of action has accrued, except where the personal injury was caused by an intentional tort. (See 1 Weinstein-KornMiller, 1ST. Y. Civ. Prac., pars. 214. 10-214.16, and cases cited; 2 Carmody-Wait 2d, New York Practice, § 13:74; McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 214, p. 313, Legislative Studies and Reports.)
The court concludes that defendant’s motion as to the third alleged cause of action should be denied; the plaintiff’s motion should be granted. No motion costs are awarded.