(No. 41425.—

JAMES WILLIAMS, Appellee, *vs.* BROWN MANUFACTURING COMPANY, INC., Appellant.

*Opinion filed March 24, 1970.—Rehearing denied June 25, 1970.*

CREBS, J., took no part.

Martin J. Corbell, of Sonnemann & Corbell, of Vandalia, and Gordon Burroughs, of Burroughs, Simpson & Burroughs, of Edwardsville, for appellant.

Beatty, Schooley and Theis, of Granite City, for appellee.

Mr. Chief Justice Underwood delivered the opinion of the court:

James Williams was injured while operating a trenching machine manufactured by defendant, Brown Manufacturing Company, Inc. Williams brought an action against defendant under a theory of strict product liability in tort, essentially alleging an unreasonably dangerous design, and was awarded damages in the amount of $40,000 by a Madison County circuit court jury. The judgment was affirmed by the Appellate Court for the Fifth Judicial District (93 Ill. App. 2d 334), and we granted leave to appeal.

While numerous questions are raised here, most were adequately treated by the appellate court. Those upon which we disagree or deem an expression of opinion by this court desirable are:

1. The nature of the conduct by a plaintiff which will bar recovery in an action based upon strict liability in tort in this State, and the related issue: upon whom rests the burden of pleading and proving the absence or existence of that conduct?

2. When does the statute of limitations commence to run in such an action predicated upon defective product design?

3. Should all members of the Appellate Court for the

Fifth Judicial District have disqualified themselves in the initial review of this case?

A detailed factual statement is contained in the opinion of the appellate court. (93 Ill. App. 2d at 349-357.) An abbreviated statement, therefore, is sufficient to place the first of the above questions in context for the purpose of this opinion.

Plaintiff's recovery was based upon a count alleging that while he was operating the trencher, "the machine bucked and unexpectedly jumped a number of feet to the rear, knocking the plaintiff to the ground and running over him, thereby causing serious and permanent injuries * * *." This count enumerated several respects in which the condition of the trencher was "unreasonably dangerous", alleged that the condition existed when the trencher left defendant's control, and claimed that plaintiff's injuries were a direct and proximate result of the condition. There was no allegation of plaintiff's exercise of due care or his freedom from contributory negligence. Defendant's answer included two affirmative defenses: the action was barred by the statute of limitations, and plaintiff had "assumed all risk in relation to use and operation" of the trencher. Both defenses were stricken by the trial court on plaintiff's motion because of the court's opinion that the proof was insufficient to support either defense.

Defendant contends that the trial court erred in denying its successive motions to dismiss, for directed verdict, and for post-trial relief, all of which were based on the ground that the plaintiff had failed to state or prove a cause of action because of his failure to allege or prove that he was in the exercise of due care for his own safety. Plaintiff argues that in a strict liability case, contributory negligence, or the failure to exercise due care, is an affirmative defense.

The evidence indicated that, while plaintiff was operating the machine from a position between the handlebars at its

rear, the digging teeth of the trencher momentarily caught on an underground pipe; when the teeth suddenly slipped off the pipe, the machine lurched backward. Plaintiff maintained that the power unit should have been equipped with some safety device, such as a "throw out clutch", to prevent such a build-up of force. Alternatively, he argued that the drive-belt should have been easily adjustable to a tension which would allow satisfactory digging normally, but would allow slippage when an obstruction was encountered. Plaintiff was allowed, at the close of his case, to allege as a further dangerous condition that the machine exhibited no warning that it should not be operated from behind and between the handlebars. Defendant maintained that users normally operated the unit from the side, gripping the handlebars from behind only to guide the machine to the digging site. An instruction booklet had accompanied the machine, and, though it did not advise as to the proper position for an operator, it did state in the two pages concerned with operation and maintenance:

> "ADJUSTMENTS AND MAINTENANCE
>
> The engine is bolted stationary to the machine, and when the drive belts become loose enough to slip, adjust them by the threaded shaft on the right hand clutch lever. Caution—do not adjust the belts too tight; they must be able to slip under shock load.
>
> Service and Maintenance Tips on Bus Brown Trenchers. Short Belt Life: Belts that are adjusted too tight may turn sideways, also not be able to slip under shock load.
>
> Shearing Woodruff Keys * * * Possible Cause and Remedy.
>
> Generally the drive belts are adjusted too tight, especially on the model 468R, the drive belts must be adjusted so they do not slip under normal trenching, but should be loose enough to slip when some object gets caught in the

digging chain, if the belts cannot slip, there is no protection against sudden shock."

On cross-examination, plaintiff acknowledged having read the manual prior to his injury, although it is unclear how completely he read it. He did admit to reading at least a portion of the maintenance section, in which section the quoted language appeared.

In resolving the case before us the appellate court relied upon § 402A of the Restatement (Second) of Torts comment (n), which reads as follows: *"n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

The appellate court construed our decision in *People ex rel. General Motors Corp.* v. *Bua,* 37 Ill.2d 180, as holding that contributory negligence is properly an issue in a strict liability case, but it was not felt decisive of the specific type of conduct included within this "contributory negligence", nor upon whom fell the pleading-and-proof burden. Therefore, the appellate court adopted the Restatement view as to the type of plaintiff conduct barring recovery and defined contributory negligence in an action based on strict liability as "voluntarily and unreasonably proceeding to encounter a known danger or proceeding unreasonably to make

use of a product after discovery of a defect and becoming aware of the danger." (93 Ill. App. 2d at 347.) That test is substantially narrower than the concept of contributory negligence presently a part of negligence law in this State, where plaintiff must plead and prove that he was in the exercise of due care, as measured by the objective reasonable-man standard, for his own safety. *Swenson* v. *City of Rockford,* 9 Ill.2d 122, 127; *Austin* v. *Public Service Co. of Northern Illinois,* 299 Ill. 112, 120.

The question as to the type of plaintiff conduct which will bar recovery has received considerable attention since we imposed strict tort liability in *Suvada* v. *White Motor Co.,* 32 Ill.2d 612. Federal courts applying Illinois law have considered it in *Dazenko* v. *James Hunter Mach. Co.* (7th cir. 1968), 393 F.2d 287, 290-91, and in *Ragain* v. *Chainbelt, Inc.,* No. 66-C-1563 (N.D.E.D. Ill. 1967), and our appellate courts have done so in *Adams* v. *Ford Motor Co.* (1968), 103 Ill. App. 2d 356, 243 N.E.2d 843; *Vlahovich* v. *Betts Machine Co.* (1968), 101 Ill. App. 2d 123, 242 N.E.2d 17, petition for leave to appeal allowed, 40 Ill.2d 580; *Sweeney* v. *Matthews* (1968), 94 Ill. App. 2d 6, 16-26; *Dunham* v. *Vaughan & Bushnell Mfg. Co.* (1968), 86 Ill. App. 2d 315, 331-32, affirmed without discussion of this issue, 42 Ill.2d 339 (1969); *Brandenburg* v. *Weaver Manufacturing Co.* (1967), 77 Ill. App. 2d 374.

There has been much said about the apparent divergence of judicial opinion regarding the impact of contributory negligence in strict product liability actions in tort. Those differences, however, seem to us more semantical than substantial. Indeed, prior to this modification of our opinion on rehearing, our earlier opinion in this case apparently was thought to imply that every plaintiff in a strict product liability action in Illinois was under a "duty to inspect" all products for potential defects, and that failure to plead and prove such an inspection would constitute a bar to recovery under the doctrine of contributory negligence. This implica-

tion was not intended by the court, and we are persuaded that it is necessary to review our position and adopt a more appropriate and workable framework for treatment of plaintiffs' recovery-barring conduct in strict product liability cases.

All authorities agree that plaintiffs in tort actions may so conduct themselves as to bar recovery for injuries suffered by them. This recovery-barring conduct, while given different labels, is ofttimes treated within the general concept of "contributory negligence." (See, *e.g.,* Annot., 13 A.L.R. 3d 1057, § 11 (1967); Annot., 4 A.L.R. 3d 501, §§ 1 and 2 (1965); *Keener* v. *Dayton Electric Mfg. Co.* (Mo. 1969), 445 S.W.2d 362; *Buttrick* v. *Arthur Lessard & Sons, Inc.* (N.H.), 260 A.2d 111; *Ettin* v. *Ava Truck Leasing, Inc.,* 53 N.J. 463, 251 A.2d 278; *Maiorino* v. *Weco Prods. Co.,* 45 N.J. 570, 214 A.2d 18; *Dippel* v. *Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55.) However, a greater degree of culpability on the part of a plaintiff will be required in order to bar recovery in some types of action than in others. Thus, his simple contributory negligence (*i.e.,* lack of due care for one's own safety as measured by the objective reasonable-man standard) will bar recovery by a plaintiff in a tort action for negligence in this State (*Swenson* v. *City of Rockford,* 9 Ill.2d 122, 127; *Austin* v. *Public Service Co. of Northern Illinois,* 299 Ill. 112, 120), and plaintiff must allege and prove his exercise of due care (*Carter* v. *Winter,* 32 Ill.2d 275); but as to other types of actions a greater degree of culpability on plaintiff's part may be necessary in order to preclude recovery and simple contributory negligence will not suffice. In determining where the loss should fall as between the nonnegligent manufacturer, distributor or retailer and the less than careful plaintiff, it has generally been recognized that plaintiffs who "misuse" a product—use it for a purpose neither intended nor "foreseeable" (objectively reasonable) by the defendant—may be barred from recovery. (Restatement

(Second) of Torts, § 402 A, comment (h) ; Epstein, Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah L. Rev. 267, 270; *Greeno* v. *Clark Equipment Co.* (N.D. Ind. 1965), 237 F. Supp. 427, 429; *O. S. Stapley Co.* v. *Miller* (1968), 103 Ariz. 556, 447 P.2d 248, 253; *Greenman* v. *Yuba Power Products, Inc.* (1962), 59 Cal. 2d 57, 27 Cal. Rptr. 697, 701, 377 P.2d 897, 901; *Preston* v. *Up-Right, Inc.* (1966), 243 Cal. App. 2d 636, 52 Cal. Rptr. 679, 683 & nn. 3 & 4; see also *Neusus* v. *Sponholtz* (7th cir. 1966), 369 F.2d 259.) There is likewise general agreement that a plaintiff who knows a product is in a dangerous condition and proceeds in disregard of this known danger (often termed "assumption of risk") may not recover for resulting injuries. Restatement (Second) of Torts, § 402A, comment (n) and § 496D; Annot., 4 A.L.R. 3d 501, §§ 5, 7 (1965); Epstein, 1968 Utah L. Rev. at 270; *O. S. Stapley Co.* v. *Miller* (1968), 103 Ariz. 556, 447 P.2d 248, 253; *Shamrock Fuel & Oil Sales Co.* v. *Tunks* (Tex. 1967), 416 S.W.2d 779; see also, *e.g.*, *Cedar Rapids and Iowa City Railway and Light Co.* v. *Sprague Electric Co.*, 280 Ill. 386; *Barefield* v. *LaSalle Coca Cola Bottling Co.*, 370 Mich. 1, 120 N.W.2d 786; *Brockett* v. *Harrell Bros., Inc.*, 206 Va. 457, 143 S.E.2d 897.

The question before us is whether, in a strict product liability in tort action, the concept of contributory negligence as it prevails in this State shall bar a plaintiff's recovery, or whether that recovery will be barred only when the nature of plaintiff's misconduct has reached the point at which he has misused the product or has assumed the risk of its use. We are persuaded that the policy considerations which led us to adopt strict tort liability in *Suvada* compel the elimination of "contributory negligence" as a bar to recovery. We also note that all other jurisdictions which have adopted the theory of strict liability have reached substantially the same conclusion, for, even though some of the opinions speak in terms of "contributory negligence" (see, *e.g.*, *Ettin,*

*Maioriny,* the actual conduct there held to bar recovery would by us be classified as misuse or assumption of risk. We accordingly hold that contributory negligence, as it is known in this State, is not a bar to recovery in a strict product liability tort action in Illinois, and the plaintiff need not plead and prove his exercise of due care. In adopting this position, we of course reject any contrary positions suggested in *Bua* or elsewhere.

Pursuant to the position we have taken regarding contributory negligence, it is clear that plaintiff's complaint was sufficient notwithstanding the absence of an allegation that he exercised due care. However, we must still determine whether the action of the trial court in striking defendant's affirmative defense of assumption of the risk was proper.

There is some evidence from which a jury might infer that plaintiff understood the trencher was to be operated from the side, rather than from behind and between the handlebars, but chose to operate from the rear because of the terrain in which the injury occurred. His testimony establishes that the ground was sloping to a sufficient extent that he and his assistant found it necessary to build a ridge of dirt along one side of the proposed trench and lay boards along it in order to keep the trencher level and digging vertically. Just before reaching the particular point at which the injury occurred, however, the ground apparently leveled out somewhat and plaintiff decided the ridge and boards were not needed and that he could control the level of the trencher sufficiently by leaning against the handlebar on the upward side. Additionally, during various stages of cross-examination, he acknowledged that operation from behind required stretching over the handlebars to operate the levers, and, also, that from his position between the handlebars it was impossible to see how the machine was digging. He explained that he relied on a laborer, who was assisting him, to watch this operation. It would not be unreasonable for a

jury to conclude that plaintiff's decision to operate the machine from this admittedly inconvenient position might have been prompted more by the sloping terrain than by any characteristic of the trencher itself. His direct testimony as to the circumstances surrounding his injury may be viewed as supporting this conclusion:

"Q. When you started digging across the road back toward the bottom of the picture, is there a depression?

A. Yes, it slopes down toward this roadway. I know when we got over the rise and started down we shut down the machine and the laborer went and got us about four boards approximately 4' long.

Q. What did he do with the boards?

A. He would dig the dirt and throw it along this edge and put boards up to level the machine up.

Q. What was the purpose of the boards?

A. In digging a ditch with this type trencher we don't have a equalizing device on it, you get an undercut.

Q. What do you mean?

A. The trencher is like this position and you would get an undercut on this side.

Q. You are indicating at an angle?

A. At an angle.

Q. As you dug along, after you cross the road, did anything unusual occur?

A. In this area here, we had come up to a level spot where we didn't have to take the time—

Q. Indicate on the picture where you are talking about a level spot.

A. There was a culvert here, I don't know the approximate length of it, but, as we came along, it more or less leveled out in that area. You don't need the boards and build-up as it leveled it up it was doing a pretty good job. We had just come off the last end boards and going to dig along the culvert.

Q. What happened?

A. The machine still had a slight drift and digging on a slight slope of any type you have to lean and steer by the handle bars—in other words, if the machine starts one way you lean to more or less hold it on the line. I was looking toward the machine across the left handle bar—the motor more or less just pulled down and the next thing I knew the machine had knocked me down and it rared up and came back across me again pinning me to the ground."

More substantial evidence was presented which could reasonably support a jury determination that plaintiff recognized and voluntarily accepted the danger posed by improper drive-belt adjustment. Plaintiff was an experienced "operating engineer", with proficiency in a wide range of machinery; a jury could have believed him aware of the trencher's obvious design features. Indeed, he admittedly "checked out" the new machine to be sure it was in order. Since he was an experienced machinery operator, a jury could reasonably believe that he understood the general characteristics of belt-drive systems, and it was obvious that the trencher utilized such a system. An expert in mechanics testifying for plaintiff conceded on cross-examination that the maintenance section of the manual was sufficient to apprise him of the danger posed by improperly adjusted belts, stating, "It was very clear." He further admitted that he would be able to adjust the belts in conformity with the manual's advice. This would have assured slippage when the machine encountered the underground pipe, and defendant's theory is that the injury would not then have occurred.

The new machine had been assembled only a few days prior to the accident by plaintiff's father, who was the "master mechanic" and foreman supervising plaintiff at the time. The father indicated that the manual was not with the machine at the time he assembled it, and that therefore he

adjusted the tension on the drive-belts without consulting the manual. He further testified that the manual first appeared when someone brought it to the site where the trencher was about to be operated, and that he had never had the manual in his car or possession prior to the injury. Plaintiff, on the other hand, testified that he asked his father for the manual on the afternoon before the accident, he was told by him that it was in a brown envelope in his father's car, and that he read it while the two drove home from work. In any event, plaintiff admits having read, prior to his injury, portions of the manual relating to maintenance. As earlier noted, that was the section of the manual which contained the cautionary instructions relating to the drive-belt. It also appears that plaintiff may have contemplated the possibility of encountering an underground obstruction, but discounted the danger since, as he related on cross-examination, he had understood there was no underground obstruction in the area.

We emphasize that "assumption of risk" is an affirmative defense which does bar recovery, and which may be asserted in a strict liability action notwithstanding the absence of any contractual relationship between the parties. Furthermore, while the test to be applied in determining whether a user has assumed the risk of using a product known to be dangerously defective is fundamentally a subjective test, in the sense that it is *his* knowledge, understanding and appreciation of the danger which must be assessed, rather than that of the reasonably prudent person (Restatement (Second) of Torts, § 496D, comment (c)), it must also be remembered that this is ordinarily a question to be determined by the jury. That determination is not to be made solely on the basis of the user's own statements but rather upon the jury's assessment of all of the facts established by the evidence. No juror is compelled by the subjective nature of this test to accept a user's testimony that he was unaware of the danger, if, in the light of all of the evidence, he could not

have been unaware of the hazard (Restatement (Second) of Torts, § 496D, comments (d) and (e)); and the factors of the user's age, experience, knowledge and understanding, as well as the obviousness of the defect and the danger it poses, (Wade, Strict Tort Liability of Manufacturers, 19 Sw. L. J. 5 (1965), see *Pitts* v. *Basile,* 35 Ill.2d 49) will all be relevant to the jury's determination of the issue, if raised. In addition, as earlier noted, plaintiff's misuse of the product may bar recovery. This issue may arise in connection with plaintiff's proof of an unreasonably dangerous condition or in proximate causation or both. See Annot. 13 A.L.R. 3d 1057, § 11 (1967).

A determination of the propriety of the trial court's action in striking the affirmative defense of assumption of risk must be predicated upon consideration of the totality of the evidence in its aspect most favorable to defendant. (*Pedrick* v. *Peoria & Eastern R.R. Co.,* 37 Ill.2d 494.) Viewed in this light, we cannot say that the evidence as a whole so overwhelmingly favors plaintiff that a jury finding for defendant on this issue could never stand. It is therefore necessary that this cause be remanded for a new trial under proper instructions in accordance with this opinion.

Defendant contends that the action is barred by the two-year statute of limitations. (Ill. Rev. Stat. 1961, ch. 83, par. 15.) Plaintiff's original complaint was filed May 10, 1963, alleging personal injuries as the result of an occurrence on May 19, 1961. The parties stipulated that the evidence showed that the trencher was out of the control of the defendant more than two years before the complaint was filed.

Defendant argues that a strict tort liability action for damages from defective design should accrue at the time the product leaves the control of the manufacturer. It cites no authority for this statutory interpretation, but emphasizes the extent of the potential liability for a defectively designed product in which the defect will normally exist in each of the products as contrasted with other types of defect

which may exist in only one or a number less than all of the products.

As pointed out in *Rozny* v. *Marnul,* 43 Ill.2d 54, the constitutionally established policy of providing a remedy for every wrong inflicted is tempered by the policy of the statute of limitations which bars actions brought after the period of time which the legislature has determined makes the problems of proof so difficult as to pose a danger of injustice. When interpreting the statute applicable here (Ill. Rev. Stat. 1961, ch. 83, par. 15) we have held that an action to recover for personal injuries resulting from a sudden traumatic event accrues when plaintiff first knew of his right to sue, *i.e.* at the time when the injury occurred. (*Leroy* v. *City of Springfield,* 81 Ill. 114; see *Madison* v. *Wedron Silica Co.,* 352 Ill. 60, 62.) Although we have not specifically held this rule applicable to a products liability claim, (see *Gray* v. *American Radiator and Standard Sanitary Corp.,* 22 Ill.2d 432, 435) refusal to do so would emasculate much of the consumer protection afforded by *Suvada.*

We recognize that a necessary element of plaintiff's case is proof of existence of the defective condition at the time the product left the seller's control, and that proof of that element may well involve events which occurred more than two years prior to the time suit is brought (as is the case here and was also true in *Suvada* v. *White Motor Co.,* 32 Ill.2d 612, 613-14). Because plaintiff has the burden of proving this fact and because defendant is in the better position to know the condition of his product when it left his control, adequate safeguards exist against injustices arising from the passage of more than two years time. We accordingly hold this action properly brought within the period allowable by the applicable statute. Ill. Rev. Stat. 1961, ch. 83, par. 15; accord, *Sides* v. *Richard Mach. Works, Inc.* (4th cir. 1969), 406 F.2d 445; *Rosenau* v. *City of New Brunswick* (1968), 51 N.J. 130, 238 A.2d 169; *Wilsey* v.

*Sam Mulkey Co.* (N.Y. Sup. Ct. 1968), 289 N.Y.S.2d 307; see *Howe* v. *Pioneer Mfg. Co.* (1968), 262 Cal. App. 2d 230, 68 Cal. Rptr. 617; 2 Frumer & Friedman, Products Liability, (1969 Supp.) sec. 16A (5)(g).

Defendant argues that it was denied the due process of law guaranteed by both Federal and State constitutions in that the Fifth District Appellate Court refused to request transfer of the cause to a separate panel of judges. In its notice of appeal and a separate motion filed in the appellate court defendant called attention to the fact that one of the members of the appellate court had been a member of the firm representing plaintiff and had taken an active part in the early stages of the case prior to his election to the bench.

The motion filed in the appellate court alleges that trial of this case proceeded on March 14, 1966; that a pertinent opinion of the Fifth District Appellate Court authored by the former member of the law firm representing plaintiff was in the hands of plaintiff's law firm during the trial although that opinion had not been filed by the appellate court with its clerk until March 10; that because of the close association of the members of that appellate court, all of its members were disqualified from reviewing this case because of the fact that one of the members had participated initially in the early proceedings in this case. The appellate court member who had formerly been a partner in the firm representing plaintiff did not, of course, participate in the appellate review of this case. A retired judge was assigned by our court to complete the three-member panel.

There appears to us nothing particularly unusual, and certainly nothing sinister, in the fact that trial attorneys have a copy of a relevant reviewing court opinion in the trial of a case commencing four days after that opinion is filed with the clerk of the reviewing court; rather, it seems to us indicative of diligence on the part of counsel. Nor do we agree that disqualification of one member of a review-

434

ing court necessitates disqualification of the entire court in the absence of factors more persuasive than those appearing here. See *Biggins* v. *Lambert,* 213 Ill. 625, 630; Annot. 10 A.L.R. 2d 1307 (1950).

For the reasons herein given the judgment of the appellate court is reversed and the cause remanded to the circuit court of Madison County.

*Reversed and remanded.*

Mr. JUSTICE CREBS took no part in the consideration or decision of this case.