Hazel WALKER, Plaintiff-
Appellant,

v.

TRICO MANUFACTURING COMPANY,
INC., a foreign corporation, De-
fendant-Appellee.

No. 72–1721.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1973.

Decided Sept. 14, 1973.

Rehearing Denied Oct. 30, 1973.

Certiorari Denied March 18, 1974.
See 94 S.Ct. 1564.

Joseph · A. Rosin, Chicago, Ill., for plaintiff-appellant.

Howard T. Brinton, Harold W. Huff, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, FAIRCHILD and STEVENS, Circuit Judges.

SWYGERT, Chief Judge.

Plaintiff-appellant, Hazel Walker, appeals from a jury verdict for the defendant in her action to recover damages for an injury she sustained when her left hand was crushed in a blow-mold machine that was manufactured by the defendant. Plaintiff's action was brought in federal court under diversity jurisdiction, making the law of Illinois applicable.

Plaintiff's complaint was based upon a products strict liability theory, specifically, that the defendant's machine was not reasonably safe for operators because the safety device was improperly designed and that the improper design was the sole proximate cause of plaintiff's injury. To understand this theory, it is necessary to attempt an explanation of the operation of this rather complicated machine.

Defendant's blow-mold machine is designed to produce plastic products by extruding a hot cylinder of plastic between two die faces, each of which is shaped like a half of the product to be produced. The dies are set in a mold which closes upon the cylinder of plastic. Air is then forced into the cavity between the die faces and the plastic is literally blown into the shape of the die. When the cycle is completed, the mold automatically opens and the machine operator reaches between the then separated die faces and removes the finished product.

The cycle begins by the activation of a switch referred to as the "limit" switch. The limit switch is not usually touched by the operator. Rather, the machine is designed with a large sliding glass safety shield which slides horizontally in front of the open die press area. When the glass shield is slid into the closed position, the area in which the die faces come together is completely shielded so that the operator cannot have his hands in the machine when the die faces close. Sliding the glass shield into the closed

position also automatically activates the machine by causing the limit switch to be tripped by a metal finger which projects from the upper right hand side of the sliding glass panel. The machine is "dead" when the glass safety shield is in the open position and will close only when the limit switch is tripped. Theoretically, the switch can only be tripped by sliding the safety shield in front of the die face area to its closed position. In actual fact, however, the limit switch was placed in such a position on the machine that it could be depressed by the operator. The evidence demonstrated that it was within easy reach of the operator and could be activated either intentionally or unintentionally.

It was plaintiff's theory that she accidentally depressed the limit switch while she was attempting to dislodge a piece of plastic which had become stuck on one of the die faces. Specifically, plaintiff asked the jury to infer, though she did not actually know how the machine was activated when the safety shield was open, that her right hand accidentally depressed the limit switch while her left hand was between the die faces trying to free the stuck plastic. No one actually saw the accident. The foreman testified that when he found the plaintiff she was unconscious but that her right hand was on the frame of the safety shield in close proximity to the limit switch.

Defendant's liability was predicated upon two interlocking factors: (1) that the machine was unreasonably dangerous because the limit switch was placed within reach of the operator where it could be accidentally activated, and, (2) that the machine was unreasonably dangerous because the designer failed to cover the switch in a manner which would prevent accidental activation.

Evidence adduced at trial consisted, in part, of testimony by defendant's president and an engineering expert for each party. Plaintiff extracted from the president an admission that he had actually foreseen the possibility that an operator might accidentally activate the

limit switch and that he had even considered placing a cover over the switch to obviate this danger, but decided not to do so. Plaintiff's expert testified that in his opinion the placement of the limit switch within reach of the operator without some form of safety shield rendered the machine unreasonably dangerous. He further stated that other blow-mold machines produced by different companies placed a shield over the switch. Defendant's expert and its president, the machine's designer, both testified that in their opinion the machine was not unreasonably dangerous. They further stated, over plaintiff's objection, that it was the practice in the trade not to shield limit switches.

In addition to asserting that the machine was not unreasonably dangerous, defendant sought to prove that plaintiff was misusing the machine at the time of the accident and, in the alternative or in addition, that she had assumed the risk of her actions. The trial court gave instructions on both defenses.

I

The plaintiff contends that the trial court erred in submitting to the jury an instruction on the affirmative defenses of misuse of the product and assumption of the risk. Her point is well taken, for neither defense has any support in the record.

■■ Misuse of a commercial article occurs when it is used "for a purpose neither intended nor 'foreseeable' (objectively reasonable)" by its manufacturer or distributor. Williams v. Brown Mfg. Co., 45 Ill.2d 418, 425, 261 N.E.2d 305, 309 (1970). That description does not fit this case. The machine was being used at the time of the accident for no purpose other than the one for which it was specifically designed, namely, the manufacture of plastic articles. And Trico had foreseen the possibility that an operator of the machine might gain access to the limit switch, either by accident or by design. If, then, "purpose" as used in Williams is taken broadly to

include even the contingencies pertaining to the operation of the machine—an interpretation which hardly flows from *Williams* with ease—Trico could not maintain its misuse defense.

■■ The risk of conduct pertaining to a machine is assumed when its operator knows that the conduct is dangerous yet carries on with it. Williams v. Brown Mfg. Co., 45 Ill.2d 418, 426, 261 N.E.2d 305, 309 (1970); Restatement (Second) of Torts, § 402A, comment (n), and § 496D (1965). The record is barren of evidence to suggest that the plaintiff knew of the danger associated with manipulation of the limit switch; indeed, she was steadfast in her assertion that she knew of the location but not the purpose of the switch. Contrary to the oral argument of counsel for Trico, the record fails to indicate that the plaintiff or her fellow employees engaged in a practice of manipulating the limit switch to free articles stuck in blow-mold machines.

We conclude that the trial judge committed reversible error in instructing the jury on assumption of risk and misuse.

## II

■ Since this case must be retried, we add our comments on other aspects of the trial attacked as erroneous. The interjection by Trico of an unsupported inference that the plaintiff had been drinking prior to the accident was unnecessarily prejudicial to her case. During cross-examination of the plaintiff, defense counsel asked several questions designed to have the jury believe that she had displayed symptoms of alcohol or drug consumption at the time she was admitted to the hospital for emergency treatment. Despite vigorous objection by her counsel, the court permitted the questions to stand on the promise of defense counsel that the matter would be linked up later by Trico when it presented its case in chief. This promise went unfulfilled. The trial court attempted to cure the error by an instruction which read:

Arguments and statements and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence and if any statement, argument or remark had no basis in the evidence, as you recall the evidence, then you should disregard that argument, statement or remark, and you will disregard any reference made by counsel as to the physical or mental condition of the plaintiff at the time that she received her injury.

We do not believe that the general language of that instruction could adequately cure the prejudice which likely flowed from questions asked by defense counsel.

■ Secondly, the trial judge erred in allowing Trico to introduce evidence of an absence of prior accidents on blow-mold machines without first laying a proper foundation therefor. Generally speaking, evidence of this sort is properly admitted only if the party-defendant shows, as foundation, that the absence of prior accidents took place with respect to machines substantially identical to the one at issue and used in settings and circumstances sufficiently similar to those surrounding the machine at the time of the accident to allow the jury to connect past experience with the accident sued upon. *See* McCormick, Evidence, § 200 (2d ed., 1972). In this case, the testimony indicated that Trico had sold about 45 machines, but the record does not disclose how many of those machines had the limit switch located in the same position as the switch on the machine in question or whether there were any other material differences in such machines. Nor did the testimony identify any of the other users of the machines or give any foundation evidence whatsoever with regard to the frequency or conditions of use of such other machines. The sufficiency of foundation evidence varies from case to case and must be determined by an exercise of the trial court's discretion.

Without even a minimal foundation, however, Trico should not have been permitted to introduce its evidence of an absence of prior accidents.

Lastly, the trial judge did not err in allowing Trico to introduce evidence of the "state of the art" relating to blow-mold machines and their safety devices. The plaintiff opened this matter during the presentation of her case in chief. Having done so, she cannot complain of Trico's attempt at rebuttal. It may be true that the "state of the art" has no relevance to the defense of an action sounding in strict products liability, *see* Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443, 266 N.E.2d 897 (1970), but, just as proof of the issue by a defendant is assumed to prejudice the case of a plaintiff despite its irrelevance, it cannot be assumed that the jury would not be prejudiced against Trico by the plaintiff's introduction of the issue.

The judgment of the district court is reversed and we remand the case for a new trial.