**Peggy COLEMAN, Plaintiff–Appellant,**

v.

**RAMADA HOTEL OPERATING COMPANY, doing business as Lakelawn Lodge, Defendant–Appellee.**

No. 90–1223.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1990.

Decided May 20, 1991.

472

Robert E. Gordon, Mitchell S. Lipkin, Gordon & Gordon, Chicago, Ill., for plaintiff-appellant.

John C. Kiely, Dennis M. Glynn, Thomas J. Keevers, Paul M. Hummel, Catherine E. Long, Karen C. Wallace, Steven O. Hamill, Keevers & Hittle, Chicago, Ill., for Lakelawn Lodge, defendant-appellee.

Before BAUER, Chief Judge, CUDAHY and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Boisterous rough and tumble sports have long been a source of picnic amusement. The three-legged race, the sack hop and the egg toss seldom fail to evoke hearty guffaws. Most of those who participate in such light-hearted antics escape unscathed, but Peggy Coleman was not so lucky. After fracturing her ankle and tearing a ligament during a company-sponsored recreational outing, Coleman filed this personal injury suit against the owner of the grounds where the unfortunate accident took place, Ramada Hotel Operating Company (Ramada). Coleman attributes her injuries to Ramada's alleged negligence in operating an obstacle course as part of the day's entertainment. The district court granted summary judgment in favor of Ramada because it found that Coleman voluntarily assumed the obvious risks inherent in the activity. We affirm.

I.

Every year, McDonald's Corporation (McDonald's) sponsors a recreational outing for its employees. Peggy Coleman was employed by McDonald's from May 1986 to February 1988. On July 17, 1987, while she was working for McDonald's, Coleman attended the annual company picnic which was held that year at Lakelawn Lodge in Delavan, Wisconsin, a resort owned by defendant Ramada. One of the events at the picnic—a "mini olympics"—involved a timed obstacle course. To mount a slide backwards was the first hurdle. Participants were instructed to clamber up the slippery slope of an ordinary playground slide and climb down the stairs on the back of the slide. The slide presented no latent danger. Coleman concedes that the slide was in good repair—it was stable and possessed firm handrails. The only risk, then, was that inherent in the reversal of its normal use.

Of her own volition, Coleman competed in this event. After observing her team member ascend the slide before her, Coleman mounted the chute portion of the slide without incident. Carefully grasping the handrails and treading one step at a time, Coleman descended the ladder portion of the slide. Despite her caution, however, Coleman slipped and fell from the second stair from the top, severely injuring her ankle.

Coleman brought suit against Ramada, charging Ramada with breach of its duty of reasonable care towards her in two distinct ways: first, by failing to warn her of the possibility of injury and, second, by failing to provide safe apparatus for the mini olympics. Ramada moved for summary judgment on both claims. To Coleman's first argument, Ramada responded that it was not obliged to warn of the glaringly obvious risk of a fall faced by anyone who climbs up the chute of a slide and descends by the ladder. As for Coleman's second claim, Ramada contended that Coleman's free and informed decision to mount the slide rendered her own conduct the sole proximate cause of her injury or, in the alternative, statutorily barred her from recovery because she was more than fifty percent contributorily negligent.

The district court granted summary judgment in favor of Ramada on both claims but based its decision upon slightly different grounds. The court agreed with Ramada that Illinois imposes no duty to warn of such open and obvious risks. The court relied, however, upon the doctrine of

assumption of risk—not the closely-related affirmative defense of contributory negligence—to bar Coleman's second claim, reasoning that any element of negligence in Ramada's decision to include a backward slide in the obstacle course was nullified by Coleman's voluntary choice to engage in an inherently dangerous activity.

On appeal, Coleman challenges the district court's entry of summary judgment on the following grounds. First, she contests the district court's denial of her rather dilatory request for leave to amend her complaint, contending that she is entitled to amendment even at this stage in the proceedings. Second, she argues that Ramada should have issued a warning under the unique circumstances of this case because of the likelihood that excited participants speeding through the competitive obstacle course would fail to recognize the otherwise apparent danger of climbing a slide backwards. Third, she takes issue with the district court's *sua sponte* consideration of assumption of risk, emphasizing that Ramada raised only the affirmative defense of contributory negligence. Finally, she insists that the district court improperly applied assumption of risk to her because she was simply a business invitee with no explicit contractual link to defendant Ramada.

## II.

■ We review the district court's entry of summary judgment *de novo*, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable ... or is not significantly probative ... summary judg-

ment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11.

■ As a preliminary matter, we note that neither party to this suit has argued here or in the district court for the application of Wisconsin law, despite some significant contacts with the state of Wisconsin. We therefore do not question the district court's conclusion that Illinois law governs this case. *See D & G Stout, Inc. v. Bacardi Imports, Inc.*, 923 F.2d 566, 568 (7th Cir.1991). In the absence of any dispute over the choice of law, the district court properly applied Illinois law—the law of the forum in which it sits. *See Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 299 (7th Cir.1985) (per curiam) ("Where parties fail to raise a possible conflict of substantive laws, the better rule, in our opinion, is that the substantive law of the forum controls.").

### A. The Amended Complaint

■ Federal Rule of Civil Procedure 15(a) mandates that a court freely allow amendments to a complaint "when justice so requires." In an attempt to resurrect her case, at the close of discovery, more than one month after Ramada filed its summary judgment motion, Coleman sought leave to supplement her complaint with several additional allegations. But these additional allegations merely reiterate and embroider the claims Coleman already presented in her original complaint, adding little, if anything, of substance to her case. Although the federal rules generally favor a liberal amendment policy, justice does not demand that Coleman be given leave to append frivolous or repetitive allegations to her complaint at any stage in the proceedings. In light of Coleman's tardiness in requesting this amendment and the insubstantial character of the new allegations, the district court's decision denying Coleman leave to amend her complaint was not an abuse of its discretion.

### B. The Duty to Warn

■ Illinois law imposes no duty to warn of open and obvious risks. *See Cope v. Doe*, 102 Ill.2d 278, 80 Ill.Dec. 40, 464

N.E.2d 1023 (1984) (no duty to warn seven-year-old boy who drowned in pond); *Alop by Alop v. Edgewood Valley Community Ass'n*, 154 Ill.App.3d 482, 107 Ill.Dec. 355, 507 N.E.2d 19 (1st Dist.1987) (no duty to guard against risk of child falling from slide onto asphalt surface). Citing the *Restatement (Second) of Torts*, several Illinois courts have concluded that even a child should reasonably be expected to appreciate certain obvious dangers, such as those posed by fire, bodies of water or lofty heights. *See Cope*, 102 Ill.2d at 287, 80 Ill.Dec. at 44, 464 N.E.2d at 1027 (citing *Restatement (Second) of Torts* § 339 comment j, at 203); *Alop*, 154 Ill.App.3d at 486, 107 Ill.Dec. at 489, 507 N.E.2d at 22 (same). Illinois law is thus in harmony with the *Restatement*, which recommends that property owners generally not be compelled to take precautions against known or evident risks. *See Restatement (Second) of Torts* § 343A comment e, at 219.[1]

▮ Ramada was not obliged to post a warning notifying Coleman and other participants of the blatant risks posed by this obstacle course. The game presented no hidden dangers, for even Coleman concedes that the ordinary playground slide from which she fell was in perfectly good repair. The only risk Coleman did incur—the increased probability of a fall due to the reversal in the slide's use—should have been apparent to her from the outset. From the very time when she was instructed to clamber up the chute of the slide and climb down the ladder portion of the slide, Coleman understood what the first hurdle entailed. Under Illinois law, even a child is expected to comprehend the danger of falling from a slide or drowning in a pond. *See Cope*, 102 Ill.2d at 278, 80 Ill.Dec. at

40, 464 N.E.2d at 1023; *Alop*, 154 Ill. App.3d at 482, 107 Ill.Dec. at 355, 507 N.E.2d at 19. Given this standard, certainly an adult like Coleman should have perceived the danger of mounting a slide in a backwards manner, especially after she had observed her teammate perform the same task.

Coleman now argues, however, that the district court failed to consider the likelihood that excited participants rushing through the obstacle course would overlook this danger. But this argument parses the risks too fine. The general possibility of injury to participants who compete in an obstacle course under time pressure was certainly apparent. Coleman cannot fault Ramada for failing to warn her of a risk that stemmed from her own heated decision to join in the fray. Moreover, Coleman should have been on notice of any incremental danger she faced as a result of her speed and excitement. If it is reasonable to charge a child with appreciation of the two-fold risk of falling from a slide onto a hard asphalt surface, *see Alop*, 154 Ill.App.3d at 482, 107 Ill.Dec. at 355, 507 N.E.2d at 19, it is similarly reasonable to charge an adult with awareness of the compound risk of mounting a slide backwards as part of a timed obstacle course. Ramada should not be held liable for failure to issue superfluous warnings regarding such manifest dangers.

*C. The Failure to Plead Assumption of Risk*

▮ In general, a defendant must affirmatively set forth "assumption of risk, contributory negligence ... and any other matter constituting an avoidance or affirmative defense" in its response to the plead-

---

1. Comment e provides:

   In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that [the visitor] will protect himself by the exercise of ordinary care, or that [the visitor] will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

   Restatement (Second) of Torts § 343A comment e, at 219.

ings under Federal Rule of Civil Procedure 8(c). By negative inference, a defendant's omission of an affirmative defense should therefore amount to a waiver. *See, e.g., Pinto Trucking Service, Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981). In this case, however, Ramada's failure to specifically plead assumption of risk, although raising a substantial question, should not result in waiver because the affirmative defense of contributory negligence which Ramada did plead is broad enough to encompass assumption of risk.

Though distinct in principle, assumption of risk and contributory negligence are often confused and there exists substantial overlap between the two doctrines. Pure assumption of risk consists of voluntary consent to encounter a known risk while pure contributory negligence consists of failure to exercise reasonable care in self-protection. In a large number of real cases, however, the two doctrines are inextricably intertwined. In such cases, the plaintiff's conduct amounts to both assumption of risk and contributory negligence because her acceptance of a known risk is at the same time unreasonable and negligent.[2] Illinois courts are not incognizant of this doctrinal overlap. Recognizing that a plaintiff's "recovery-barring conduct, while given different labels, is oft-times treated within the general concept of 'contributory negligence,'" the Illinois Supreme Court has explained that "the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger ... commonly passes under the name of assumption of risk." *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 423–25, 261 N.E.2d 305, 308–09 (1970).

Coleman's conduct in voluntarily undertaking to climb a playground slide backwards appears to fit into both doctrinal pigeonholes, simultaneously constituting assumption of risk and contributory negligence. Because one act gave rise to both affirmative defenses, pleading of either defense would elicit the same discovery. Therefore, Coleman could not have suffered any prejudice from Ramada's failure to plead precisely assumption of risk. In light of the lack of prejudice to Coleman and the blurring of the doctrinal line demarcating these two theoretical categories, the district court's *sua sponte* consideration of assumption of risk based upon Ramada's raising of contributory negligence was not improper. *See Lucas v. United States*, 807 F.2d 414, 417–18 (5th Cir.1986) (failure to plead affirmative defense did not result in waiver when no prejudice to plaintiff); *cf. Boone v. Kurtz*, 617 F.2d 435 (5th Cir.1980) (district court's *sua sponte* dismissal of suit based upon *res judicata* not improper, even though defendant failed to plead this affirmative defense, in interest of judicial economy). We are reluctant to construe such a technical misstep on the part of Ramada to yield a fatal waiver.

## D. Assumption of Risk

Once we reach the merits, we conclude that Coleman assumed the risk of injury by volunteering to encounter a known and obvious risk. Illinois law bars recovery for injuries arising from voluntary participation in inherently dangerous activities. *See, e.g., Keller v. Mols*, 156 Ill.App.3d 235, 108 Ill.Dec. 888, 509 N.E.2d 584 (1st Dist.1987) (barring recovery of hockey player because he implicitly assumed risk of being struck by puck by participating in contact sport); *Provence v. Doolin*, 91 Ill.App.3d 271, 46 Ill.Dec. 733,

---

**2.** The Restatement elaborates upon this overlap between the two doctrines, explaining that

The same conduct on the part of the plaintiff may thus amount to both assumption of risk and contributory negligence, and may subject him to both defenses. His conduct in accepting the risk may be unreasonable and thus negligent, because the danger is out of all proportion to the interest he is seeking to advance, as where he consents to ride with a

drunken driver in an unlighted car on a dark night, or dashes into a burning building to save his hat.... The great majority of the cases involving assumption of risk have been of this type, where the defense overlaps that of contributory negligence. The same kind of conduct frequently is given either name, or both....

Restatement (Second) of Torts § 496A comment d, at 562.

414 N.E.2d 786 (5th Dist.1980) (barring recovery of pit crew member injured while standing by race track because he implicitly assumed risks involved).

This case approaches the paradigmatic instance of assumption of risk: Peggy Coleman elected to take her chances by competing in the mini olympics obstacle course with full knowledge of the hazardous nature of the event. After watching her teammate ascend the first hurdle before her, Coleman mounted the chute portion of the slide and stepped down the ladder, carefully grasping the handrails and treading one step at a time. One who freely chooses to climb up a slide backwards certainly assumes the perils of an inadvertent plunge to the ground. That Coleman was aware of the danger of falling is manifest in the very caution she observed while descending the slide. As Chief Judge Cardozo explained when rejecting the claims of an individual similarly injured by a fall from an amusement park ride aptly termed "The Flopper":

> One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball.

*Murphy v. Steeplechase Amusement Co.,* 250 N.Y. 479, 482, 166 N.E. 173, 174 (1929). As with "The Flopper," any risks that may have been posed by inclusion of the backwards slide in the obstacle course were overt and inherent in the nature of the activity. Therefore, any misjudgment on Ramada's part in designing the obstacle course was nullified by Coleman's free and informed choice to participate in the event.

■ Coleman now argues, however, that the doctrine of assumption of risk may be applied only to situations involving an explicit contractual relationship between the parties. Although Illinois courts often proclaim that assumption of risk is limited to cases involving a contractual relationship, they generally construe such a relationship broadly to embrace business invitees. In *Provence v. Doolin,* 91 Ill.App.3d at 280, 46 Ill.Dec. at 740, 414 N.E.2d at 793, for example, the Illinois Appellate Court declared that "the defense of assumption of risk is confined to situations where the parties have a contractual or employment relationship" but held that mere payment of a fee for entry upon recreational premises sufficed to create such a contract. The court noted that, although one golfer whose ball strikes and injures another may not assert the defense of assumption of risk, the golf course may raise the defense because of its "contractual relationship" with the injured golfer. In *Duffy v. Midlothian Country Club,* 92 Ill.App.3d 193, 200, 47 Ill.Dec. 786, 792, 415 N.E.2d 1099, 1105 (1st Dist.1980), the court similarly applied the doctrine to a business invitee, concluding that "where there is a contractual relationship existing between the parties, as we have in the pending negligence action, assumption of risk as a defense may be applicable." *See also Campbell v. City of Peru,* 48 Ill.App.2d 267, 198 N.E.2d 719 (1964) (applying assumption of risk to business invitee). By this reasoning, Coleman's status as a business invitee upon Ramada's premises should involve a "contractual relationship" sufficient to support application of assumption of risk.[3]

■ Finally, Coleman asserts that her conduct should not completely bar recovery because it consists solely of secondary implied assumption of risk, a doctrine now merged into the comparative negligence regime. Illinois courts have classified the doctrine of assumption of risk into three categories: express assumption of risk, primary implied assumption of risk and secondary implied assumption of risk. *See Duffy v. Midlothian Country Club,* 135 Ill.App.3d 429, 433–34, 90 Ill.Dec. 237, 241, 481 N.E.2d 1037, 1041 (1st Dist.1985). Express assumption of risk demands an ex-

**3.** Nor can Coleman distinguish her case on the basis that she did not pay for entry upon Ramada's premises. Attending a recreational outing at a beautiful resort was a perk of Coleman's employment with McDonald's, a part of her remuneration for the job. Therefore, Coleman paid the economic equivalent of a fee for entry upon Ramada's premises through her labor for McDonald's.

plicit agreement while implied assumption of risk infers willingness to accept a known risk from the conduct of the parties. In primary implied assumption of risk, the plaintiff assumes risks inherent in the nature of the activity while in secondary implied assumption of risk, the plaintiff assumes risks that are created by the defendant's negligence. Only the first two of these forms have survived the advent of comparative negligence in Illinois. Because it is deemed functionally similar to contributory negligence, the third category—secondary implied assumption of risk—has been abolished. *See id.* But Coleman's attempt to squeeze herself into the category of secondary implied assumption of risk is of no avail because any risks that she assumed were intrinsic to the activity itself rather than being the product of any negligence on Ramada's part. Whatever danger Coleman faced in mounting the playground slide backwards stemmed from the nature of the activity and not from Ramada's upkeep of the slide. Thus Coleman's conduct amounts to primary implied assumption of risk, which still operates as a complete bar to recovery.

### III.

Even after drawing all reasonable inferences in favor of Coleman, we are unable to detect any issue of material fact sufficient to preclude a grant of summary judgment. Ramada was not obliged to post a warning notifying participants of the obvious dangers posed by the obstacle course. Moreover, Coleman's voluntary choice to participate in an inherently risky activity bars her from recovery under Illinois law. Coleman was free to refrain altogether from participation in this hazardous sport had she wished to avert any possible risk of injury. As Chief Judge Cardozo once observed, "The timorous may stay at home." *Murphy v. Steeplechase Amusement Co.*, 250 N.Y. at 483, 166 N.E. at 174. Therefore, the district court's entry of summary judgment in favor of Ramada is

AFFIRMED.