Carl W. HINES, Plaintiff–Appellant,

v.

JOY MANUFACTURING COMPANY and Long–Airdox Company, a Division of the Marmon Group, Inc., Defendants–Appellees.

No. 87–5700.

United States Court of Appeals, Sixth Circuit.

Argued April 25, 1988.

Decided June 29, 1988.

Charles S. Wible (argued), Daniel Caslin, Owensboro, Ky., for plaintiff-appellant.

Marvin P. Nunley (argued), McCarroll, Nunley and Hartz, Owensboro, Ky., for defendants-appellees.

Charles G. Franklin (argued), Madisonville, Ky., for Joy Mfg. Co.

Before MERRITT and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Carl Hines appeals the district court's dismissal of his complaint and various interlocutory orders entered in this products liability case. For the following reasons, we affirm the district court's judgment.

### I.

This case arises from an accident in an underground coal mine operated by Peabody Coal Company on August 8, 1983. On that date, the belt structure of a mobile bridge unit pinned appellant Carl Hines to the coal rib, resulting in serious and permanent injuries to his hips and legs. Following is a brief summary of the accident and a description of the machinery involved.

There were two pieces of equipment involved in the accident. One was a continuous miner which was designed and manufactured by appellee Joy Manufacturing Company to mine coal in an underground mine. The other was a continuous haulage system consisting of mobile bridge units designed and manufactured by appellee Long–Airdox Company to allow the movement of coal from the face of the mine to the surface. Although the continuous miner was designed to work with shuttle cars, the continuous haulage system eliminated the need for them.

To provide continuous hauling to the surface, several mobile bridge units may be connected in a snake-like fashion with an operator stationed at each unit. The continuous haulage system was designed to permit attachment directly to the tail of the continuous miner by welding a yoke, provided by Long–Airdox, to the continuous miner. In this case, both the mechanical and electrical connection of the continuous haulage system to the continuous miner were performed by Peabody Coal.

Hines, a mobile bridge unit operator, was injured as he attempted to dislodge a large rock from the continuous haulage system. After hitting the panic bar which shut down the power to the mobile bridge units and the continuous miner, appellant manually attempted to dislodge the rock. Another mobile bridge unit operator restarted the unit in hopes of dislodging the rock and proceeded to the area where appellant was working.

Upon hearing the conveyor belts of the continuous haulage system running, the continuous miner operator started the continuous miner and moved it in a reverse direction. Neither appellant nor the other mobile bridge unit operator was near the work station where the panic bars were located. The continuous miner with the attached continuous haulage system jackknifed, pinning appellant between the wall of the mine and the continuous haulage system. As a result of the accident, appellant sustained injuries to his hips and legs.

Hines filed a complaint on July 19, 1984, followed by an amended complaint on September 5, 1984, invoking the district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Appellant alleges that appellees are liable for his injuries based on the legal theories of negligence, strict liability, breach of warranty, and defective design and manufacture of their respective pieces of equipment.

Appellee Joy Manufacturing moved for summary judgment on March 14, 1986, on the ground that Peabody Coal's subsequent attachment of Long–Airdox's continuous haulage system to the continuous miner, constituted an alteration of the product sufficient to invoke Kentucky Revised Statutes § 411.320. Both appellees moved the court to bifurcate the proceedings into a

trial for liability, followed by a trial for damages.

On September 12, 1986, the district court issued an order granting Joy Manufacturing's motion for summary judgment and bifurcating the trial. In granting Joy Manufacturing's motion for summary judgment, the district court held that there was no doubt that the continuous miner had been modified and that there was no question that Joy Manufacturing had furnished no instructions for the modification. The court further held that appellant would not have been injured if the continuous miner had been used in its original, unmodified condition. The court concluded that, therefore, section 411.320(1) provided a defense for Joy Manufacturing. The district court did not elaborate on its reasons for granting the motion to bifurcate the issues of damages and liability.

A pre-trial conference was held in January of 1987. At that time, the parties were ordered to exchange the identities of all expert witnesses who were expected to be called at the trial, together with a statement of the subject matter upon which the experts were expected to testify, the substance of facts and opinions to which the experts were expected to testify, and a summary of the grounds for the opinions. Appellant responded on January 26, 1987, listing Daniel E. Lebo, as an expert expected to testify on the defective and unreasonably dangerous design of the mobile bridge unit.

At trial, Mr. Lebo testified concerning identifiable design defects or deficiencies with regard to the safety of the continuous haulage system. Among other things, Mr. Lebo testified that there was no lockout device to deactivate the continuous miner while still allowing the mobile bridge units to be operated for clean out and that there was no pull-cord device to grab in an emergency. On cross-examination, appellee Long–Airdox's counsel elicited a response from Mr. Lebo that the testimony concerning the lockout and pull-cord devices were opinions that had been developed by Mr. Lebo subsequent to his deposition.

Long–Airdox then moved to strike Mr. Lebo's testimony in its entirety on the ground that there had been no supplement to discovery. Hines responded that Long–Airdox already knew of the information concerning the lockout and pull-cord devices because other experts had testified to these devices, so that there would be no difficulty in defending. Further, appellant contended that Mr. Lebo's testimony was substantially on the same subject, and that failure to admit the testimony would be harsh and would prejudice appellant's case. The district court struck only those portions of Mr. Lebo's testimony at trial that did not conform to his deposition testimony.

Later in the trial, Long–Airdox, over Hines' objection, presented testimony concerning the absence of prior claims involving the equipment which was the subject of the lawsuit.

A jury verdict was returned on May 21, 1987, in favor of Long–Airdox. This timely appeal followed. This court must consider the following questions on appeal: (A) whether the district court properly granted Joy Manufacturing's motion for summary judgment; (B) whether the district court abused its discretion in ordering separate trials on the issues of liability and damages; (C) whether the district court abused its discretion in striking that portion of appellant's expert witness' testimony which did not conform to discovery; and (D) whether the district court abused its discretion in admitting evidence of the absence of prior claims.

## II.

### A.

The general standard an appellate court applies in reviewing a grant of summary judgment is the same as the district court employs initially under Federal Rule of Civil Procedure 56(c). 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716 (1983); *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the District Court—that there is an ab-

sence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez,* 826 F.2d at 1536. Where it is clear there is no genuine issue of material fact, a court may properly grant summary judgment on a ground other than that assigned in the motion. 6 J. Moore, *Moore's Federal Practice* § 56.14[1] (1987). Additionally, "[a]n appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous basis relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory." *Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981).

Kentucky Revised Statutes § 411.320 sets forth circumstances under which defendants are liable in Kentucky products liability actions.

(1) In any product liability action, a manufacturer shall be liable only for the personal injury, death or property damage that would have occurred if the product had been used in its original, unaltered and unmodified condition. For the purpose of this section, product alteration or modification shall include failure to observe routine care and maintenance, but shall not include ordinary wear and tear. This section shall apply to alterations or modifications made by any person or entity, except those made in accordance with specifications or instructions furnished by the manufacturer.

(2) In any product liability action, if the plaintiff performed an unauthorized alteration or an unauthorized modification, and such alteration or modification was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether

or not said defendant was at fault or the product was defective.

(3) In any product liability action, if the plaintiff failed to exercise ordinary care in the circumstances in his use of the product, and such failure was a substantial cause of the occurrence that caused injury or damage to the plaintiff, the defendant shall not be liable whether or not said defendant was at fault or the product was defective.

 In the absence of a controlling decision on the issue at hand, federal courts exercising diversity jurisdiction must attempt to predict how the state courts will act in the future. *Filley v. Kickoff Publishing Co.,* 454 F.2d 1288, 1291 (6th Cir.1972). Furthermore, a district court's interpretation of state law is given considerable weight by courts of appeals. *Wright v. Holbrook,* 794 F.2d 1152, 1155 (6th Cir.1986).

The Kentucky Supreme Court has held that the Products Liability Act is to be construed to limit liability in products liability actions. *Reda Pump Co. v. Finck,* 713 S.W.2d 818, 820 (Ky.1986).

[Section] 411.320(1) limits liability to that which would have occurred had the product been used in its original, unaltered, and unmodified form, and [section] 411.-320(2) precludes recovery by a plaintiff who performs an unauthorized alteration or modification of the product, which alteration substantially causes injury.

[Section] 411.320(3) absolutely bars recovery in cases where contributory negligence of the plaintiff substantially contributes to cause an occurrence which injures the plaintiff.

*Id.*

The Kentucky courts, however, have not rendered a controlling decision on the issue at hand, i.e., whether there is a genuine issue of material fact concerning a manufacturer's liability under the Product Liability Act when the plaintiff's employer welded a permanent yoke to its product and permanently hitched a second piece of

equipment to make an integral unit.[1] Therefore, we must remain sensitive to the nature and scope of our review and will defer to the district court's interpretation of state law if it is permissible. *See Wright*, 794 F.2d at 1155.

In the instant case, Charles F. McGregor, a former superintendent for Peabody Coal affirmatively responded to the question whether the continuous miner had to be modified before it could be connected to the mobile bridge unit. Dempsey Paul Ezell, a mobile bridge operator for Peabody Coal, testified that the mobile bridge unit was permanently welded to the tail of the continuous miner. He elaborated as follows: "Well, when I say permanently welded it's got a plate that's welded to the bottom of this tail and it's got pins you can pull and release it, but it's what I call permanently. The way they've got it fixed, it's made permanently to the Joy." James E. Gatehouse, an employee of Long–Airdox at the time of the accident, stated that the yoke that was used to connect the continuous miner was made by Long–Airdox and was an integral part of the continuous miner. Thus, there is no question that the continuous miner was modified.

Furthermore, McGregor testified that he would have given the order for the two pieces of equipment to be connected. He stated that Joy Manufacturing representatives were present and aware when the continuous miner was connected to the continuous haulage system, but that he did not personally consult them. McGregor indicated in his deposition that the welding of the yoke as well as the mechanical connection of the two pieces of equipment had been carried out by Peabody Coal. This evidence inescapably leads to the conclusion that the modification was made without specifications or instructions provided by Joy Manufacturing.

Appellant argues, however, that its modification was "impliedly authorized" by Joy Manufacturing because field representatives for Joy Manufacturing were aware of the connection of the continuous miner to Long–Airdox's continuous haulage system. We reject this argument. Section 411.320(1) applies to alterations or modifications "except those made in accordance with specifications or instructions *furnished by the manufacturer.*" (Emphasis added). The Kentucky Supreme Court has stressed that the Products Liability Act is to be construed in accordance with its plain meaning. *Reda Pump Co.*, 713 S.W.2d at 819–20. In the instant case, there is no question that Joy Manufacturing did not furnish specifications or instructions within the plain meaning of those words. Furthermore, the Kentucky Supreme Court has found no merit to the contention that section 411.320(3) merely adopted the state of the common law in negligence cases because the entire tenor of the Product Liability Act is to restrict and limit products liability actions. *Id.* at 820. For the same reason, we are not inclined to read the common law concept of foreseeability, *see* Restatement of Torts (Second) § 402A, into the Product Liability Act.

Appellant argues further, however, that the district court erred because there is a genuine question of material fact concerning whether the unauthorized modification actually caused the accident. We reject this argument. Frank B. Kendrick, Production Manager on Continuous Miners and Loading Machines for Joy Manufacturing, indicated in his deposition that the continuous miner involved in this case was built to be used primarily with shuttle cars. Kendricks testified, however, that Joy Manufacturing customarily reinforced the continuous miner structurally according to their own specifications if a customer noti-

---

1. A Kentucky court of appeals has held that whether or not a product was subsequently modified by a third person is a question of fact for the jury. *Wheeler v. Andrew Jergens Co.*, 696 S.W.2d 326, 327 (Ky.App.1985). In *Wheeler*, there was a genuine question of material fact concerning whether some unknown third party had tampered with a bottle of shampoo. The instant case is distinguishable because no one has disputed the facts surrounding the connection of these pieces of equipment. The only question is whether the undisputed facts lead to a conclusion that Joy Manufacturing is entitled to summary judgment as a matter of law.

fied the company that it intended to use a continuous miner with a mobile bridge unit. Additionally, Joy Manufacturing manufactured a continuous haulage system which was substantially different from the system connected to the continuous miner in this case. Joy Manufacturing's system was a flexible conveyor train, and it was suspended from the roof of the mine instead of connected directly to the continuous miner. Of course, there is no genuine question of material fact concerning whether this accident would have occurred if the continuous miner had not been modified since the two machines could not have jackknifed unless the modification had taken place.

The evidence further indicates that had the modification been done according to Joy Manufacturing's instructions and specifications the connection of the two pieces of equipment would have been stronger. Had Peabody Coal purchased a continuous haulage system manufactured by Joy Manufacturing, there would have been no connection of the two pieces of equipment at all. Appellant has not introduced evidence which shows that the same accident would have occurred if either of these alternatives had been chosen. We further hold, therefore, that appellant has raised no genuine issue of material fact concerning whether the same accident would have occurred had Peabody Coal's modification been made with instructions and specifications provided by Joy Manufacturing. For these reasons, the district court properly granted Joy Manufacturing's motion for summary judgment.

### B.

■ Federal Rule of Civil Procedure 42(b) provides as follows:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Bifurcation of issues of liability from those relating to damages is an obvious application of Rule 42(b). Logically, liability must be resolved before damages may be considered. Often the evidence relevant to the two issues is wholly unrelated. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2390 (1971). On review of a final order, "[t]he appellate court will leave a great deal to the discretion of the trial court, but there has been a reversal when the appellate court thought the separation was prejudicial to a party." *Id.* at § 2392. In *Moss v. Associated Transport, Inc.*, 344 F.2d 23, 26 (6th Cir.1965), construing a prior version of Rule 42(b), this court stated:

We add the caveat expressed in *Frasier v. Twentieth Century–Fox Film Corp.*, 119 F.Supp. 495, 497 (D.Neb.1954) that separation of issues 'should be resorted to only in the exercise of informed discretion and in a case and at a juncture which move the court to conclude that such action will really further convenience or avoid prejudice' and observe further that '[a] paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto.'

In the instant case, appellant argues that the extent of the injury is relevant to the question of whether a manufacturer was negligent in putting its product on the market. This argument is apparently based on the familiar Learned Hand formula for determining liability. *See United States v. Carroll Towing Co.*, 159 F.2d 169 (2d Cir. 1947). In *Crummett v. Corbin*, 475 F.2d 816, 817 (6th Cir.1973), a personal injury action which was bifurcated similarly to the instant case, however, this court rejected the appellant's argument that she was prejudiced by the fact that the jury was unable to consider evidence respecting her injuries in making its findings on the question of

liability. We noted that "[s]uch consideration of evidence not related to the question of liability appears to be a type of prejudice which is to be avoided by separating the issues of liability and damages under Rule 42(b)." *Id.* Appellant cites to no cases, nor have we found any, in which Kentucky has adopted the formula for liability urged by appellant in this case. Therefore, *Crummett* is controlling, and we hold that the district court did not abuse its discretion in bifurcating this case on the issues of liability and damages.

### C.

Federal Rule of Civil Procedure 26(e) provides as follows:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

██ Exclusion of evidence, continuance, or other action deemed appropriate by the court may be imposed as a sanction for breach of the duties set forth under Rule 26(e). *See* Advisory Committee Note to Rule 26(e). A court has wide discretion in deciding whether to impose a sanction. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2050 (1970).

██ Appellant must show substantial prejudice before we will grant a new trial based on an alleged Rule 26(e) error. *See K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 766 (6th Cir.1985). In the instant case, the district court struck only those portions of Mr. Lebo's testimony that did not conform to his deposition testimony, i.e., that there was no lockout device to deactivate the continuous miner while still allowing the bridge units to be operated for clean out and that there was no pull-cord device to grab in an emergency. Appellant argues that since the substance of the bulk of the excluded testimony was furnished by other witnesses, admission of this testimony would not have prejudiced Long–Airdox unfairly. This argument, however, convinces the court that because the substance of the excluded testimony was furnished by other witnesses for appellant, its exclusion was not prejudicial to appellant. For this reason, we reject appellant's argument.

### D.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 402 provides as follows: "All relevant evidence is admissible, except as otherwise provided.... Evidence which is not relevant is not admissible." The primary exception to the admissibility of relevant evidence is contained in Federal Rule of Evidence 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

██ In the instant case, the evidence of lack of prior claims was admitted

to show lack of defective design and lack of notice of any defect. The lack of prior accidents or claims may be admissible to prove the following:

> (1) the absence of the defect or condition alleged; (2) the lack of a causal relationship between the injury and the defect or condition charged; (3) the nonexistence of an unduly dangerous situation; or (4) want of knowledge (or of grounds to realize) the danger.

E. Cleary, *McCormick on Evidence* § 200 (3d ed.1984). Thus, the evidence of lack of prior claims was relevant evidence in this case as the district court held.

■■■ The district courts have broad discretion in deciding issues of admissibility under Rule 403. *Koloda v. General Motors Parts Div.*, 716 F.2d 373, 378 (6th Cir.1983). In order to exclude evidence under rule 403, it must be more than damaging to the adverse party; it must be unfairly prejudicial. *Id.*

■■■ In the instant case, appellant argues that Long–Airdox did not produce evidence that there was substantial similarity between the conditions which gave rise to no prior claims and the conditions which gave rise to this case. Long–Airdox's expert, however, testified that the original design of the mobile bridge unit dates back to the late 1950's or early 1960's. Additionally, Long–Airdox clarified at the outset that the 200 units sold were similar to the type of design of the equipment that was the subject of this case. *C.f. Walker v. Trico Mfg.*, 487 F.2d 595, 599 (7th Cir.1973) (holding that it was error for the trial court to admit evidence of lack of prior accidents when the similarity of the forty-five units sold was not known), *cert. denied*, 415 U.S. 978, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

Finally, this court has noted as follows: [In the case of evidence of lack of prior incidents, there is] no danger of arousing the prejudice of the jury, as the proof of another accident may do. Moreover, the danger of spending undue time and incurring confusion by raising 'collateral issues,' conjured up in some of the opinions, seems not at all borne out by experience in jurisdictions where the evidence

is allowed. The defendant will seldom open this door if there is any practical possibility that the plaintiff may dispute the fact.

*Koloda*, 716 F.2d at 378.

Appellant has not shown that the evidence concerning lack of prior claims was unfairly prejudicial. Accordingly, we hold that the district court did not abuse its discretion in admitting this evidence.

For the foregoing reasons, the district court's judgment is AFFIRMED.

MERRITT, Circuit Judge, dissenting.

I would reverse the grant of summary judgment to appellee Joy Manufacturing. I would read the Kentucky Product Liability Act to except modifications made with the knowledge and acquiescence of the manufacturer from the § 411.320(1) limitation of liability. Because it is a question of fact whether Joy knew of and acquiesced in Peabody Coal's modification of the continuous miner, the grant of summary judgment should be reversed.

The majority declines to read the common law concept of foreseeability into the Product Liability Act. This interpretation seems correct, as the Act does not incorporate the reasoning of § 402A of the Restatement of Torts (Second). However, the issue in this case is not one of "foreseeable modification." Instead, the issue is whether a manufacturer's knowledge of and acquiescence in a modification is a modification "made in accordance with specifications or instructions furnished by the manufacturer." The majority dispenses with the inquiry into whether the modification was authorized by stating that "there is no question that Joy Manufacturing did not furnish specifications or instructions within the plain meaning of those words." However, I do not think that the Kentucky Supreme Court would go so far as to hold that manufacturers must furnish written specifications and instructions before their actions fall within the exception to the statute. The "specifications or instructions" requirement should be interpreted to include modifications of which the manufac-

turer had actual knowledge. The purpose of exempting modifications made according to the manufacturer's specifications or instructions from the terms of the statute is to eliminate the "foreseeable modification" doctrine of the Restatement and substitute a test in which manufacturers can only be held liable when they know and approve of the uses to which their products are being put. Therefore, actual knowledge and acquiescence has the identical effect as the explicit furnishing of specifications and instructions. Modifications that the manufacturer authorizes cannot shield the manufacturer from liability.