961 F.2d 1576
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patsy E. COLE, Plaintiff-Appellant,
v.
Cully A. COBB, Vanderbilt Medical Center, Defendants-Appellees,
B.B. Melsungen, Tri-Hawk International, Inc., Karen Woncik,
Ray W. Mettetal, Defendants.
 No. 91-5557.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and CHURCHILL, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff, Patsy E. Cole, appeals from the district court's order granting summary judgment to defendants, Dr. Cully A. Cobb, Jr., M.D. and the Vanderbilt Medical Center, in this diversity medical malpractice case. Cole raises two issues on appeal:
 
 
 2
 1) Whether the district court erred in granting summary judgment for the defendants on Cole's claims of negligence per se, lack of informed consent per se, and civil conspiracy; and
 
 
 3
 2) Whether the district court abused its discretion in striking from the record the affidavit of Cole's expert, Delores C. Shockley.
 
 
 4
 For the reasons discussed below, we conclude that the district court did not err in any of these rulings, and we therefore affirm its grant of summary judgment for the defendants.
 
 I.
 
 5
 Patsy E. Cole suffered from a herniated disc in her back. A physician in Kentucky referred her to defendant Dr. Cully Cobb who arranged to have Cole admitted to the Vanderbilt Medical Center in Nashville, Tennessee. Cole's first admission to Vanderbilt was in January of 1984, where she was under Dr. Cobb's care for two weeks. She returned to the hospital for further treatment on February 24, 1984. This lawsuit concerns events that occurred during her second admission.
 
 
 6
 During Cole's second stay at Vanderbilt, defendants Drs. Karen Woncik and Ray Mettetal assisted Dr. Cobb in treating Cole. The principal aspect of the treatment was surgery to remove the herniated disc from Cole's spine. Drs. Woncik and Mettetal assisted Dr. Cobb in the performance of this surgery.
 
 
 7
 During the operation, a small laceration appeared in the dura of one of Cole's nerve root sleeves. According to Dr. Cobb, the nerve root sleeve had adhered to the disc. The sleeve therefore had to be lifted to reveal the herniated disc. The surgeons first noticed some leakage of spinal fluid from the sleeve while retracting it to remove the disc. The opening was located at the point where the nerve root sleeve had adhered to the disc below it. According to Dr. Cobb, this problem is not uncommon during spinal surgery.
 
 
 8
 After discovering the hole in the nerve root sleeve, Dr. Cobb sutured it closed. The doctors then turned their attention to the disc and completed the surgery. Dr. Cobb testified at deposition that the repaired nerve root sleeve was examined frequently during the remainder of the operation. At the conclusion of the procedure, the doctors were satisfied that the repair was water tight and that there was no further leakage of spinal fluid.
 
 
 9
 About six days after surgery, however, Cole began to show signs of spinal fluid leakage from the surgical wound. After nonsurgical treatment failed to stop the leakage, Dr. Cobb decided that surgery was necessary to repair the leak. The operation was performed on April 2, 1984. The doctors discovered the leak along the suture line on the nerve root sleeve that had been repaired previously. According to Dr. Cobb, he placed several additional sutures in the area where the original sutures had been placed, and the area became completely dry. After examining the repaired suture line, Dr. Cobb decided to use Histoacryl Blue, a tissue adhesive, to reinforce the sutures. Dr. Cobb testified that this was done to insure that the repair of the dura was water tight and to stop any further leakage of spinal fluid, which could have resulted in a fatal infection.
 
 
 10
 Dr. Cobb further testified that he used only a small droplet of the tissue adhesive and that the droplet spread out very quickly to form a thin membrane on the dura and the sutures. It hardened almost instantaneously. According to Dr. Cobb, none of the adhesive penetrated the dura of the nerve root sleeve because the new sutures had completely closed any opening.
 
 II.
 
 11
 In March 1985, Cole filed suit in the United States District Court for the Middle District of Tennessee against Drs. Cobb, Woncik, and Mettetal and the Vanderbilt Medical Center for medical malpractice arising out of the treatment she had received for her herniated disc. This suit was dismissed without prejudice on the morning of trial.
 
 
 12
 In August 1987, Cole filed a second suit against the same defendants for medical malpractice, battery, and gross negligence. A year later, the district court entered an order consolidating this case with a products liability action filed by Cole against B. Braun Melsungen, AG and Tri-Hawk International, Inc. The defendants in the products liability action are not involved in this appeal.
 
 
 13
 In January 1990, Cole filed an amended complaint that adopted the allegations contained in her original complaint and added new counts of negligence per se, lack of informed consent per se, battery per se, and civil conspiracy. Two months later, she filed a motion for summary judgment on the issue of liability. Defendants filed cross-motions for summary judgment, and defendant Cobb filed a motion to strike the affidavit of Delores Shockley submitted by Cole.
 
 
 14
 The district court referred the case to a magistrate judge, who filed a Report and Recommendation to deny plaintiff's motion for partial summary judgment, grant Dr. Cobb's motion to strike the affidavit of Delores Shockley, and grant summary judgment to defendants Cobb, Woncik, Mettetal, and the Vanderbilt Medical Center. Cole filed objections to the Report and Recommendation, but the district court rejected her objections and on April 1, 1991 entered an order that adopting the magistrate judge's Report and Recommendation. Cole's timely appeal to this court followed. After the case was appealed to this court, the appeals concerning defendants Woncik and Mettetal, however, were dismissed.
 
 III.
 
 15
 Plaintiff's first and primary theory of liability in the district court was that defendants' use of the tissue adhesive, Histoacryl Blue, constituted negligence per se because the drug had not been approved by the Food and Drug Administration and its presence in this country was therefore illegal. She argues that the Federal Food Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq., provided the standard of care owed to her by the defendants and that in violating that statute, defendants were guilty of negligence per se under Tennessee law.
 
 
 16
 The magistrate judge rejected this argument, concluding that the Tennessee courts would not look to the FDCA to provide the standard of care for a physician treating a patient. Because Cole offered no other proof that the defendants had breached the standard of care, the district court granted defendants' motions for summary judgment.
 
 
 17
 We review a grant of summary judgment de novo. See EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We therefore apply the same standard as applied by the district court. Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Under this rule, once the moving party has identified an absence of evidence in support of an element essential to the nonmoving party's case, and on which the nonmoving party will bear the burden of proof at trial, the burden shifts to the nonmoving party to make a sufficient showing to raise a genuine issue of fact concerning that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 18
 Defendants make four arguments in support of the district court's grant of summary judgment on Cole's claim of negligence per se. First, they contend that Tennessee law does not recognize the doctrine of negligence per se in medical malpractice cases. Second, they maintain that Cole failed to prove that the defendants violated the FDCA. Third, they argue that Tennessee courts would not turn to the FDCA to provide the standard of care for a physician treating a patient. Finally, they contend that Cole has failed to raise a genuine issue of fact concerning whether the use of Histoacryl Blue was a proximate cause of any injury suffered by her. Because we conclude that this last ground is dispositive, we find it unnecessary to address the defendants' other arguments.
 
 
 19
 Under Tennessee law, the elements of medical malpractice are established by statute. Section 29-26-115(a) of the Tennessee Code provides:
 
 
 20
 In a malpractice action, the claimant shall have the burden of proving by evidence as provided in subsection (b):
 
 
 21
 (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
 
 
 22
 (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
 
 
 23
 (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
 
 
 24
 Tenn.Code Ann. § 29-26-115(a) (1980).
 
 
 25
 Under section 29-26-115(b) of the Tennessee Code, all three of these elements must be "proven by testimony of experts who were licensed and practicing in Tennessee or a contiguous bordering state during the year preceding the date that the alleged injury or wrongful act occurred." Payne v. Caldwell, 796 S.W.2d 142, 143 (Tenn.1990) (construing Tenn.Code Ann. § 29-26-115(b)).
 
 
 26
 Even assuming, without deciding, 1) that the doctrine of negligence per se applies to medical malpractice cases under Tennessee law, 2) that the defendants violated a statutory duty of the FDCA, and 3) that Tennessee courts would turn to the FDCA to provide the standard of care for a physician treating a patient, we nevertheless must affirm the grant of summary judgment for the defendants because Cole has failed to raise a genuine issue of fact that the use of Histoacryl Blue was a proximate cause of some injury to her.
 
 
 27
 Section 29-26-115(a)(3) of the Tennessee Code places the burden of proving proximate cause on the plaintiff in a medical malpractice case. Tenn.Code Ann. § 29-26-115(a)(3) (1980). Moreover, even under the doctrine of negligence per se, the plaintiff retains the burden of proving that the statutory violation proximately caused an injury. Berry v. Whitworth, 576 S.W.2d 351, 353 (Tenn.App.1978). Consequently, once the defendants pointed out in their motion for summary judgment that Cole had presented no evidence in support of this element of her claim, the burden shifted to Cole to make a sufficient showing to raise a genuine issue of fact concerning this element. Celotex, 477 U.S. at 322-23. Cole failed to meet this burden, and summary judgment for the defendants on this claim was therefore proper.
 
 
 28
 The only proof of causation offered by Cole was the affidavit of Delores Shockley. In this affidavit, Shockley stated that she had a Ph.D and was an associate professor of pharmacology at Meharry Medical College. On the basis of her training and experience in pharmacology, she expressed opinions concerning the applicability of the FDCA and the regulations promulgated under it to the facts of this case as well as opinions regarding the medical treatment of Cole and the consequences of using Histoacryl Blue during that treatment. Specifically, she concluded that it was her "opinion to a reasonable degree of medical and scientific certainty that the heat generated by polymerization of Histoacryl (R) Blue of the chemical reaction after the application of the adhesive, contributed to, caused and/or aggravated the scar formation."
 
 
 29
 The magistrate judge recommended that the affidavit of Shockley be stricken from the record because Shockley was not qualified to render these opinions and, even if she was qualified, the opinions were not supported with facts. The district court adopted the recommendation and granted defendant Cobb's motion to strike the affidavit from the record. On appeal, Cole argues that the district court erred in this regard.
 
 
 30
 The determination of the admissibility of expert testimony is left to the sound discretion of the district court, and unless it has abused that discretion, its determination is not subject to review. Mannino v. International Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981).
 
 
 31
 The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:
 
 
 32
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 33
 Shockley rendered a medical opinion concerning Cole's physical condition and the likely cause of that condition. She concluded that the use of Histoacryl Blue caused or contributed to the formation of excessive scar tissue in the area in which it was applied to Cole. Shockley is not a medical doctor, however. Her affidavit only establishes her qualifications as a pharmacologist. Although her experience and training in pharmacology may qualify her as an expert concerning the biochemical nature and effects of the tissue adhesive, Histoacryl Blue, it does not qualify her as an expert in the diagnosis of human illnesses. Her opinion, however, went beyond describing the potential chemical reaction caused by the application of this adhesive to human tissue; it also involved a diagnosis of Cole's physical condition and the likely cause of that condition. As such, her opinion exceeded her expertise, and the district court did not abuse its discretion in striking it from the record.
 
 
 34
 In the absence of this affidavit, Cole has presented no evidence that the use of Histoacryl Blue caused any injury to her. As a result she has failed to meet her burden under Rule 56(c) of the Federal Rules of Civil Procedure. Proximate causation is an essential element of Cole's case and one on which she would bear the burden of proof at trial. See Tenn.Code Ann. § 29-26-115(a)(3). Because Cole has failed to present any evidence of causation, she has failed to raise a genuine issue concerning this element of her cause of action. Summary judgment for the defendants on this claim was therefore proper.
 
 IV.
 
 35
 Cole's second theory of liability is that the defendants violated the consent requirements of the FDCA by not informing her of the possible use of Histoacryl Blue and that this violation of the FDCA constitutes proof of lack of informed consent per se and battery per se. We reject this novel theory for two reasons. First, it has no support in the law. We conclude that the Tennessee courts would not rely upon the FDCA to provide the standard of professional practice with respect to issues of informed consent. Second, even if this theory had some legal basis, Cole has not established that the defendants violated any consent requirements of the FDCA.
 
 
 36
 We begin by noting that Cole has not identified any Tennessee case law that recognizes her novel claim of lack of informed consent per se. In the absence of Tennessee case law on this question, we must attempt to predict how a Tennessee court would respond if this issue were presented to it. Hines v. Joy Mfg. Co., 850 F.2d 1146, 1150 (6th Cir.1988). We conclude that a Tennessee court would not turn to a statute such as the FDCA to determine the standard of professional practice with respect to the issue of informed consent.
 
 
 37
 As with medical malpractice negligence claims, claims of lack of informed consent are governed by statute in Tennessee. Section 29-26-118 of the Tennessee Code provides:
 
 
 38
 In a malpractice action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining his informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which he practices and in similar communities.
 
 
 39
 Tenn.Code Ann. § 29-26-118 (1980).
 
 
 40
 Thus, in order to demonstrate that the defendant did not act in accordance with the recognized standard of professional practice, the plaintiff must present evidence as required by section 29-26-115(b), which provides in relevant part:
 
 
 41
 No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred.
 
 
 42
 Tenn.Code Ann. § 29-26-115(b) (1980). In light of this statutory language, which requires proof of professional standards by the testimony of licensed professionals in the relevant specialty, we conclude that Tennessee courts would not look to the FDCA to provide a standard of professional practice concerning informed consent.
 
 
 43
 But even if Tennessee courts would use the FDCA in this way, Cole has failed to prove that the defendants violated the provisions of the FDCA. It is true that certain regulations promulgated under the FDCA address issues of informed consent in the context of clinical investigations concerning the safety and effectiveness of drugs and medical devices. See 21 C.F.R. § 812. These regulations, however, only apply to the clinical use of drugs and devices on human test subjects. They do not apply to a physician's use of drugs or devices during the course of treatment. As a result, Cole has failed to demonstrate how defendants' use of Histoacryl Blue during her treatment violated the FDCA or any regulation promulgated under it. In the absence of any proof of a statutory violation, her claim of lack of informed consent per se and battery per se must fail.
 
 
 44
 On appeal, Cole also argues that Delores Shockley's affidavit raises a genuine issue of fact concerning her claim of lack of informed consent. This argument also fails. After rejecting Cole's argument for the adoption of a tort of lack of informed consent per se, the magistrate judge recommended that summary judgment be granted in favor of defendants on Cole's claim of lack of informed consent on the ground that Cole had failed to present any competent evidence concerning the professional standard in this regard and therefore failed to raise a genuine issue of fact on this essential element of her claim. The only evidence in the record on this element was the testimony of Dr. Cobb, who stated that neurosurgeons in Nashville in April of 1984 did not discuss the use of tissue adhesive such as Histoacryl with their patients before surgery because the decision to use a tissue adhesive is usually made after the surgical procedure has begun and reveals a need for it. Based on the absence of any contradictory evidence, the magistrate judge recommended summary judgment for the defendants on this claim.
 
 
 45
 Cole did not file an objection to this finding of the magistrate judge, and the district court adopted it. Now, on appeal, Cole asserts that the affidavit of Delores Shockley raises a genuine issue of fact concerning the appropriate information to provide to a patient when obtaining consent to a surgical procedure. This court has held, however, that failure to file an objection with the district court as to a magistrate judge's findings constitutes a waiver of the argument on appeal. United States v. Walters, 638 F.2d 947, 949-50 (6th Cir.1981). Cole has therefore waived her right to argue this point on appeal.
 
 
 46
 But even if we were to address the merits of this argument, we would reject it. First, for the reasons discussed above, we affirm the district court's order striking Shockley's affidavit from the record. Second, even taking Shockley's affidavit into consideration, it does not raise a genuine issue of fact concerning the proper professional standard in this regard. Tennessee courts have held that for an expert to testify as to a recognized standard of acceptable professional practice in accordance with Tenn.Code Ann. § 29-26-115(b), the expert must have knowledge of the standard of acceptable professional practice in the medical specialty in which the defendant practices. Whittemore v. Classen, 808 S.W.2d 447, 456-57 (Tenn.App.1991). Shockley's affidavit does not establish that she has any knowledge of the recognized standard of acceptable practice of neurosurgeons in the Nashville area. Therefore, she is not competent to give expert testimony in this regard.
 
 
 47
 For these reasons, we affirm the district court's order granting summary judgment to the defendants on Cole's claim of lack of informed consent per se and battery per se.
 
 V.
 
 48
 Cole's final theory of liability is that the defendants conspired to use Histoacryl Blue in violation of the provisions of the FDCA and that she was injured as a result. The magistrate judge recommended that summary judgment be granted to the defendants on this claim because Cole had failed to raise a genuine issue of fact that the defendants intended to injure her, even if they had agreed to use Histoacryl Blue in violation of the provisions of the FDCA. The district court adopted this recommendation.
 
 
 49
 We affirm. A necessary element of a claim of civil conspiracy is that the conspirators intended to injure another person as a result of their conspiracy. Nashville Memorial Hosp., Inc. v. Binkley, 534 S.W.2d 318, 321 (Tenn.1976). Even granting Cole's argument that defendants conspired to use Histoacryl Blue in violation of the FDCA, Cole has provided no evidence that they intended to harm her. Indeed, all the evidence in the record suggests that they used the adhesive to help her. Moreover, as noted above, Cole has presented no evidence that the use of Histoacryl Blue harmed her in any way. As a result, Cole has failed to raise a genuine issue of fact concerning this element, and the district court's grant of summary judgment for the defendants was therefore proper.
 
 VI.
 
 50
 For these reasons, we AFFIRM the decision of the district court in all respects.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation