67 F.3d 299
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vickie Lynn FOUTCH, Plaintiff-Appellant,
v.
JOY MANUFACTURING CO., and Joy Technologies, Inc.,
Defendants-Appellees.
 No. 94-5777.
 United States Court of Appeals, Sixth Circuit.
 Sept. 25, 1995.
 
 1
 Before: MILBURN and NORRIS, Circuit Judges; and BECKWITH, District Judge*.
 
 
 2
 BECKWITH, District Judge.
 
 
 3
 Vickie Lynn Foutch appeals the district court's grant of summary judgment in favor of appellees Joy Manufacturing Company and Joy Technologies, Inc. Mrs. Foutch contends that the district court misapplied Kentucky law and further erred in finding that her wrongful death action raised no genuine issue of material fact. For the following reasons, we affirm the district court's judgment.
 
 I.
 
 4
 This case arises from an accident in an underground coal mine operated by the Blue Diamond Coal Company on December 9, 1989. On that date, while occupied with the repair of a disabled coal shuttle car, Appellant's decedent, Arthur Foutch, was struck by another shuttle car and pinned between the two vehicles. Mr. Foutch died on the way to the hospital as a result of injuries suffered in the accident. A description of the circumstances of the accident and the machinery involved follows.
 
 
 5
 On December 9, 1989, Arthur Foutch, a Blue Diamond employee, and two other Blue Diamond repairmen were in the Kentucky Mains Section of the Blue Diamond's Scotia Mine for purposes of repairing a Joy 10-SC22B-3 shuttle car known as car 406. At the same time, Timothy Cantrell, also an employee of Blue Diamond, was operating another Joy 10-SC22B-3 shuttle car known as car 413.
 
 
 6
 Timothy Cantrell had been assigned to drive car 413 at the beginning of the shift and did so without incident until his dinner break. During his break, the route from the coal face to the conveyor changed. On his first trip following the break, Cantrell turned to the right, his blind side, where he should have turned left. Cantrell's vehicle immediately collided with Mr. Foutch and pinned him between the two shuttle cars. Mr. Foutch suffered extensive injuries.
 
 
 7
 Neither party disputes that Cantrell's view across the body of car 413 was obstructed and that he was unable to see to the right front of the car where Foutch was positioned. The cause of the obstruction and the responsibility for the dangerous operation of the shuttle car form the basis of the dispute in this case.
 
 
 8
 The purpose of shuttle cars in underground mines is the transport of extracted coal from one point to another. Shuttle car 413 is 27 feet 6 inches long, weighs 18 tons, is equipped with a conveyor 56 inches wide, and is designed to carry 15 tons of coal. The operator's platform is mounted on one side of the car between the wheels. Car 413 is intended to be driven in both directions and is equipped with two sets of controls and two seats on the operator's platform. When the car is loaded with coal and moving from the extraction point to the feeder conveyor in the section of the mine where the accident took place, the operator is on the left side of the car facing forward. Mr. Foutch was positioned ahead and to the right of car 413.
 
 
 9
 Car 413 was manufactured and sold by Joy to Blue Diamond and shipped on April 22, 1985 with the following pertinent configurations:
 
 
 10
 1. An operator's cab with two Joy Rider shock absorber seats mounted on 7 5/8 inch brackets.
 
 
 11
 2. A height (excluding the canopy above the operator's cab) of 50 inches above ground level (without sideboards attached).
 
 
 12
 3. An Operator's cab equipped with a bolt-adjustable canopy, 1 inch thick, the top of which can be set from 60 to 72 inches above the ground. (The adjustable height results in an viewing space ranging from 9 to 21 inches between the body of the car and the bottom of the canopy through which the operator must be able to see.)
 
 
 13
 4. Six-inch side boards mounted on the top of the frame which run the length of the conveyor on each side. The sideboards serve to keep coal from falling off the conveyor. They rise above the top of the car and intrude into the viewing space of the operator when he attempts to see between the top of the sideboards and the bottom of the canopy to the right across the car's body.
 
 
 14
 Subsequent to shipment, and prior to the accident which killed Mr. Foutch, Blue Diamond affixed a protective mesh screen to the operator's cab of car 413. That screen prevented the adjustable canopy from being raised without removing the welding by which the screen was attached. The canopy was 12 inches above the car body and 62 inches above ground level. The Kentucky Mains Section of the mine was high enough for the canopy to have been raised to its maximum height of 72 inches had the screen not prevented it.
 
 
 15
 Also subsequent to shipping and without the participation of Joy, Blue Diamond had removed the 7 5/8 inch seat mounting brackets and replaced them with 2 5/8 inch brackets of Blue Diamond's own manufacture. The purpose of this adjustment was to seat the operator lower so that the canopy above the operator's head could be set lower and the car could be used in mine sections with lower ceiling heights.
 
 
 16
 The parties agree that Timothy Cantrell's sitting eye height was approximately 30 inches. With the 7 5/8 inch seat brackets installed, Cantrell's eye level would have been 3 inches above the top of the sideboards. With the Blue Diamond brackets installed, however, Cantrell's eye level was 2 inches below the top of the sideboards, and he could not have seen Mr. Foutch to the right across the body of shuttle car 413 at the time of the accident. The parties agree that visibility across the body of the car is not obstructed if the eye level of the operator is above the top of the sideboards.
 
 
 17
 There is no warning affixed to car 413 or included in the literature accompanying the car with respect to the danger of limited visibility under certain seat, canopy, and sideboard height configurations. There was, however, a warning plate affixed to the underside of the canopy of car 413. That warning plate stated, in part, that "no modifications, alterations, or attachments should be made to the cab or canopy without prior written approval by Joy." Further, instructions included by Joy in the shipping materials accompanying car 413 expressly stated that any replacement part must be identical to the one on the machine as manufactured and that no modifications were to be made without Joy's consent. Blue Diamond, however, neither asked for nor received Joy's express approval for any modification, alteration, or attachment to car 413.
 
 
 18
 Appellant does not allege that Joy had actual knowledge of Blue Diamond's replacement of the 7 5/8 inch factory seat brackets with its own 2 5/8 inch brackets prior to the filing of Appellant's lawsuit. Nor does Appellant allege that Joy knew of the attachment of the mesh screen. It is undisputed that Blue Diamond's 2 5/8 inch seat bracket was not identical to Joy's 7 5/8 inch seat bracket, which was installed in car 413 when shipped.
 
 
 19
 On December 12, 1990, Appellant Foutch filed a complaint in the United States District Court for the Eastern District of Kentucky, followed by an Amended Complaint on May 7, 1992, invoking the court's diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332. Appellant asserted that Appellees are liable for her husband's death on theories of strict liability and negligence.
 
 
 20
 Appellee Joy Manufacturing Company moved for summary judgment on January 19, 1993 on the ground that Blue Diamond's replacement of the 7 5/8 inch seat bracket with a 2 5/8 inch bracket of Blue Diamond's own manufacture, along with Blue Diamond's attachment of the mesh screen that prevented adjustment of the canopy height, constituted modifications or alterations that raised a defense to Appellant's claims under the provisions of the Kentucky Product Liability Act, Kentucky Revised Statutes Sec. 411.300, et seq.
 
 
 21
 On September 2, 1993, the district court issued a memorandum opinion and order granting Joy Manufacturing's motion for summary judgment. In granting the motion, the district court held that the evidence in the record unequivocally supported the finding that car 413 had been modified by Blue Diamond and that Joy had not supplied either instructions or authorization for the modification. The court also held that Mr. Foutch would not have been injured or killed had car 413 been used in its original and unmodified condition. The court concluded, therefore, that K.R.S. Sec. 411.320 provided Joy a complete defense to both of Mrs. Foutch's theories of liability.
 
 II.
 A.
 
 22
 An appellate court's review of a district court's grant of summary judgment is de novo. The standard to be applied, therefore, is the same as that applied by the court below in accord with the provisions of Rule 56 of the Federal Rules of Civil Procedure.
 
 
 23
 Rule 56(c) of the Federal Rules of Civil Procedure provides as follows:
 
 
 24
 [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 
 
 25
 The purpose of a summary judgment motion is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir.1978).
 
 
 26
 The summary judgment "standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). Moreover, when a party cannot establish the existence of an element essential to that party's case on which the party will have the burden of proof at trial, the Court must enter summary judgment against that party, pursuant to Rule 56. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thus, in order to survive a motion for summary judgment,
 
 
 27
 when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."
 
 
 28
 Matsushita Electric Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (emphasis in the original) (footnote and citations omitted).
 
 
 29
 Rule 56(e) of the Federal Rules of Civil Procedure provides as follows:
 
 
 30
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
 
 B.
 
 31
 The Kentucky Product Liability Act (the "Act") sets forth the types of actions that fall under its purview by stating that product liability suits "shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." K.R.S. Sec. 411.300(1) (emphasis added). Nowhere does the statute state that its application is limited to strict liability actions or that negligence claims are exempt from its provisions.
 
 
 32
 The Act sets out the circumstances under which defendants may be held liable in Kentucky product liability actions, including the following:
 
 
 33
 (1) In any product liability action, a manufacturer shall be liable only for the personal injury, death or property damage that would have occurred if the product had been used in its original, unaltered and unmodified condition. For the purpose of this section, product alteration or modification shall include failure to observe routine care and maintenance, but shall not include ordinary wear and tear. This section shall apply to alterations or modifications made by any person or entity, except those made in accordance with specifications or instructions furnished by the manufacturer.
 
 
 34
 K.R.S. Sec. 411.320.
 
 
 35
 Interpreting the Act, the Supreme Court of Kentucky held that the Act is to be construed to limit liability in product liability actions. Reda Pump Co. v. Finck, 713 S.W.2d 818 (Ky.1986). The court stated that Sec. 411.320(1)
 
 
 36
 limits liability to that which would have occurred had the product been used in its original, unaltered, and unmodified form, and K.R.S. 411.320(2) precludes recovery by a plaintiff who performs an unauthorized alteration or modification of the product, which alteration substantially causes injury.
 
 
 37
 Id. at 820.
 
 
 38
 Appellant's wrongful death tort action is an "action brought for or on account of ... death ... resulting from the manufacture ... of [a] product" within the meaning of K.R.S. Sec. 411.300(1). Appellant's action is, therefore, subject to the provisions of the Act. Because Blue Diamond's installation of its self-manufactured 2 5/8 seat bracket constituted a modification within the meaning of the statute, the only remaining question for the district court was whether the modification was made upon the instructions or with the permission or approval of Joy Manufacturing.
 
 
 39
 In addressing Mrs. Foutch's negligence claim, the district court relied specifically on this Court's decision in Hines v. Joy Manufacturing Co., 850 F.2d 1146 (6th Cir.1988):
 
 
 40
 The plaintiff also asserts liability based on a negligence theory, claiming that Joy knew or should have known of the design defect prior to the sale of the shuttle car. However, the plaintiff recognizes that this Court is bound by the Sixth Circuit's holding in Hines, which stated:
 
 
 41
 Furthermore, the Kentucky Supreme Court has found no merit to the contention that section 411.320(3) merely adopted the state of the common law in negligence cases because the entire tenor of the Product Liability Act is to restrict and limit products liability actions. (citations omitted) For the same reason, we are not inclined to read the common law concept of foreseeability, see Restatement of Torts (Second) Sec. 402A, into the Product Liability Act.
 
 
 42
 Since the Sixth Circuit rejected liability under the Product Liability Act based on the theory of foreseeability, this Court must do the same.
 
 
 43
 Id. at 296-97 (quoting Hines, 850 F.2d at 1151).
 
 
 44
 Appellant contends that the district court misapplied Hines to the facts of the instant case. We do not agree. Mrs. Foutch argues that the district court's interpretation of Hines would remove the foreseeability element of a negligence claim under Kentucky law. Appellant misreads the district court's decision. As Appellees' counsel pointed out at oral argument, the Kentucky Product Liability Act does not do away with, or even alter, the common law of negligence in Kentucky. It simply provides a complete defense to product liability negligence actions against manufacturers when the product is modified after shipment without the manufacturer's consent and not in accordance with the manufacturer's instructions. We conclude that the district court's statement and application of this rule were correct.
 
 C.
 
 45
 Appellant also argues that the district court erred in concluding that Blue Diamond's modifications of car 413 were made without Joy's permission or approval and not in accordance with Joy' specifications and instructions. She contends that the replacement of Joy's 7 5/8 inch seat bracket with Blue Diamond's own 2 5/8 inch seat bracket complied with Joy's specifications and with the fundamental design of the shuttle car itself. Mrs. Foutch bases her contention on the grounds that (1) the Blue Diamond 2 5/8 inch bracket was substantially similar to a 3 5/8 inch bracket manufactured, sold, and, therefore, authorized by Joy, and (2) the adjustable canopy was manufactured so that it was capable of being lowered below the level of the sideboards to a point at which no driver could see over the sideboards to the right of the car. We are not persuaded by either argument.
 
 
 46
 In its order granting summary judgment, the district court found that there was "no proof that Joy specified or authorized the replacement of the 7 5/8 inch pedestal in car no. 413." (JA at 296.) The district court, relying on Hines, stated as follows:
 
 
 47
 [T]his Court does not find that any Joy drawing referenced by Blue Diamond implied Joy's consent. However, even if it did, the Court in Hines clearly held that implied authorization is insufficient under Kentucky's Product Liability Act.
 
 
 48
 Id.
 
 
 49
 The district court specifically found that the Blue Diamond bracket was not specified or authorized by Joy. First, the court found that Joy had included express warnings both in its literature and affixed to the car itself that "any replacement part must be identical to the one on the machine as manufactured and that no modifications were to be made without Joy's written consent." (JA at 295.) In addition, Joy's parts catalogue for car 413 contained no reference to the part number of the 3 5/8 inch bracket, and Joy's employee, Ron Dickey, stated in his deposition that the 3 5/8 inch bracket was not authorized for use on a model 22B-3 shuttle car, such as car 413. Id. We agree with the district court's determination that the evidence presented by Mrs. Foutch did not raise a genuine issue of material fact with regard to her assertion that the seat bracket modification was authorized either expressly or impliedly by Joy.
 
 
 50
 We need not address Appellant's arguments concerning a tank-type seat manufactured by Joy beyond simply noting that the same analysis applies to the tank-type seat as to the 3 5/8 inch bracket.
 
 
 51
 Regarding the adjustable canopy, we agree with Appellant that vision across the car to the right would be impossible with the canopy at its lowest point as manufactured by Joy. The canopy on car 413 may have been intended to lower for certain purposes below a safe operating height and operation of the vehicle with the canopy at those heights would be unsafe. Operation of the vehicle with the canopy at its fullest height is safe, however. We are inclined to agree with counsel for Joy who analogized at oral argument that holding Joy liable for a defective design on the basis of its adjustable canopy would be similar to holding General Motors liable for manufacturing cars with doors on the grounds that freeway driving with opened doors is dangerous and likely to result in injury.
 
 D.
 
 52
 Appellant's final argument on appeal is that the trial court erred in holding that the death of Arthur Foutch would not have occurred had car 413 been used in its original condition. Though Mrs. Foutch admits that Cantrell's eye level would have been approximately three inches above the top of the sideboards with the original 7 5/8 inch seat bracket installed and the canopy raised sufficiently to allow for headroom, she contends that because the canopy was lowered to 12 inches at the time of the accident, the trial court's holding constitutes error.
 
 
 53
 This argument is without merit. With the 7 5/8 inch seat bracket in place, it would have been entirely impractical to lower the canopy height to 12 inches for purposes of normal operation. Such a lowered canopy might be practical for storage or for towing the car from one place to another through low passages, but not for operation. Moreover, the responsibility for the lowered canopy lies with Blue Diamond for lowering it and for welding the mesh screen onto car 413 in such manner as to prevent the canopy from ever being raised without prior removal of the screen.
 
 III.
 
 54
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation